No. 80-402

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

JOHN GARY PARKHILL and
JANE L. PARKHILL,

Plaintiff and Respondent,

vs.

GARY L. FUSELIER and
BETH FUSELIER,

Defendant and Appellant.

Appeal from: District Court of the Eleventh Judicial District,
In and for the County of ~~Kalispell~~. Flathead
Honorable Robert Sykes, Judge presiding.

Counsel of Record:

For Appellant:

Warden, Christiansen & Johnson, Kalispell, Montana

For Respondent:

Keller & Gilmer, Kalispell, Montana

Submitted on briefs: May 28, 1981

Decided: August 31, 1981

Filed: AUG 31 1981

*Thomas J. Kearney*
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Respondents John and Jane Parkhill brought an action in the District Court of the Eleventh Judicial District, Flathead County, alleging innocent misrepresentation as to the water supply in the sale of real property by the sellers Gary and Beth Fuselier. The case was tried without a jury, and the District Court found for the Parkhills. The Fuseliers appeal from the judgment. We affirm.

Gary and Beth Fuselier owned property in Flathead County, Montana, consisting of approximately one acre of land with a mobile home located upon it. The water supply for the property came from a well on a neighboring tract of land. The owner of the neighboring tract owned the well, had all rights to the well, and received $8 per month from the Fuseliers for supplying them with water. There was no written agreement between the Fuseliers and their neighbor concerning the water supply.

On October 10, 1977, the Fuseliers listed their property with Tri-City Real Estate in Kalispell, Montana. The listing contract contained a description of the property. In the space following the printed word "Water", the words "community $8/mo." were inserted.

The Parkhills responded to an advertisement for the Fuselier property and contacted Tri-City Real Estate. A Tri-City agent brought the Parkhills out to the Fuselier property. Gary Fuselier was on the property when it was first shown and told the Parkhills that the water came from "a kind of community water system." He also told them that he did not anticipate any problems with the water supply. The real estate agent who brought the Parkhills out to the property twice made reference to the notation on the listing

-2-

agreement which stated that the water was "community $8/mo."
The agent did this in response to questions from the Parkhills
concerning the water supply. Later, another Tri-City agent
told the Parkhills that they should have no problems with
their water supply. Jane Parkhill was still concerned about
the water supply and desired written verification of the
interest in the "community water system." She asked a Tri-
City agent about this during a negotiation for the sale.
The agent told the Parkhills there would be a registered
record of the community well and that he would obtain a copy
of the register of the well for them. Jane Parkhill asked
the agent about the well register again at the time of
signing the contract for deed for the property. The agent
replied that he had not yet obtained a copy. He told the
Parkhills that the well register was not necessary to the
signing of the contract for deed, which made no reference to
water supply. The contract for deed had been prepared by an
attorney for Tri-City Real Estate without consultation with
the Parkhills. The Parkhills did not employ an attorney for
this transaction. The contract for deed contained the
following clause:

> "INDEPENDENT INVESTIGATION: The Purchaser agrees
> and represents that said Purchaser has conducted
> an independent investigation and inspection of
> said land and premises, and has entered into this
> Contract in full reliance thereon, and that there
> are no other agreements, verbal or otherwise, modi-
> fying or affecting the terms hereof, and that
> Purchaser is not relying on oral representations
> made by Seller or Seller's agent."

Jane Parkhill called the agent about two weeks after
the contract was signed to ask him if he was going to send
the register of the well. The agent replied that he had not
yet obtained it. No such document was ever provided to the
Parkhills. Ten months after the Parkhills entered into the

contract, the neighbor who owned the well notified them that he would no longer provide the water for their property. The Parkhills were forced to join with another neighbor in drilling a new well. The Parkhills' share of the expense for the well was $2,743.75. They brought suit against the Fuseliers and sought recovery of this sum based upon the innocent misrepresentations of the Fuseliers and their agents as to the water supply for the property. The District Court found for the Parkhills and entered judgment in the amount of their cost for the new well.

The Fuseliers raise three issues on appeal:

1. Did the District Court err in holding that the Parkhills relied on the representations of the Fuseliers' agents where the Fuseliers disclaimed reliance by the express terms of the contract?

2. Were the findings of the District Court supported by substantial credible evidence?

3. Can the Parkhills prevail where they failed to discover the truth about the water supply?

On the first issue, the Fuseliers argue that justifiable reliance is a necessary element of the tort of misrepresentation, and that the Parkhills disclaimed any reliance upon possible misrepresentation by the Fuseliers or their agents when they executed a contract containing the "independent investigation" clause. The Fuseliers rely upon two recent cases, McCarty v. Lincoln Green, Inc. (1980), ___Mont.___, 620 P.2d 1221, 37 St.Rep. 2007, and Schulz v. Peake (1978), 178 Mont. 261, 583 P.2d 425.

By its terms, the "independent investigation" clause states that the Parkhills made an independent investigation and entered into the contract in reliance thereon, that there are no other agreements modifying or affecting the

terms and that the Parkhills are not relying on oral representations made by the Fuseliers or Fuseliers' agents. However, the facts do not justify a reliance upon such "independent investigation" clause. The trial court found that the Parkhills relied upon the representations of the community water as appeared in the written listing agreement which had been prepared by the realtors, and also upon the statements of the various agents of the realtor prior to and at the time of the execution of the contract for deed. The court found that all of the representations by the realtors were made as agents of the Fuseliers. This case is comparable to the McCarty case. In the McCarty case, the court distinguished from Schulz by pointing out that the McCartys had inspected the wrong property and that the inspection of the wrong property was brought about by the failure of the real estate agent to properly identify the property. As a result, McCarty held that the seller incurred a liability because the seller is bound by the misrepresentations made by real estate broker or agent as to the location of the property. This case is directly comparable to McCarty, in that the Parkhills were misled by the listing agreement and by the various oral statements of the realtors, including the statement by the realtor at the time of contract execution that a copy of the well register would be obtained and delivered to them and was not necessary to the signing of the contract. We further note that the contract for deed and the listing agreement were prepared by the realtors and the oral statements as to the community well were also made by the realtors, all without legal assistance on the part of the Parkhills. The written instruments properly are to be construed against the party who caused any uncertainty. Lauterjung v. Johnson (1977), 175 Mont. 74, 572 P.2d 511; section 28-3-206, MCA.

We hold that under section 28-10-602, MCA, the Fuseliers are responsible to the Parkhills for the negligence of their agents in the sale transaction as related to the community water interest. We hold that the "independent investigation" clause of the contract does not preclude a holding that the Parkhills justifiably relied upon the representations of the agents of the Fuseliers.

The Fuseliers' second issue concerns the sufficiency of the evidence to support the findings and judgment below. They argue that the facts do not support a finding of justifiable reliance by the Parkhills. When this Court reviews evidence, it will be viewed in the light most favorable to the party who prevailed in the District Court, and the credibility of witnesses and the weight assigned to their testimony is for the determination of the District Court in a nonjury trial. Luppold v. Lewis (1977), 172 Mont. 280, 284, 563 P.2d 538, 540-541. The findings of fact and conclusions of law of the District Court will not be disturbed if supported by substantial evidence and by the law. Lauterjung, 175 Mont. at 77, 572 P.2d at 512-513. We have reviewed the record and hold that there was sufficient credibile evidence to support the findings of the District Court.

Finally, the Fuseliers contend that the Parkhills cannot prevail because the Parkhills made no efforts to discover the truth regarding the water supply. The Parkhills inquired a number of times about the water supply. The trial court found:

> "4. After the showing of the property and prior to the signing of the buy/sell agreement, Mrs. Parkhill contacted Edward F. McAuley, broker and a member of the corporation known as Tri-City Realtors concerning the water and community well. At that time, Mr. McAuley advised her there was a community water system and that she would have no difficulties concerning same.

". . .

"7. At the time the Plaintiffs signed the con-
tract, both Defendants had already signed the con-
tract for deed. Prior to the Plaintiffs' signing
same, Mrs. Parkhill asked about the community well
and the registration of same; and was advised by
Mr. McAuley that as soon as he obtained a copy, he
would forward it to her."

The Parkhills reached their erroneous conclusion because of
the misrepresentations of the agents of the Fuseliers. The
Parkhills attempted to inquire further, but were assured
that the verification they desired was being obtained. We
hold that under the facts of this case, no additional duty
to discover the truth arose.

The judgment of the District Court is affirmed.

_____
                     Justice

We concur:

_____

_____

_____

_____
          Justices

-7-