No. 96-498

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


GREG GARRISON,

Plaintiff and Appellant,

v.

DAN L. AVERILL, TRAILS WEST
REALTY, INC., and JOHN J. GAINEY, JR.,
individually and as Trustee of the John J.
Gainey, Jr, Trust u/t dated December 21, 1987,

Defendants, Respondents
and Cross-Appellants.


APPEAL FROM:   District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Ted O. Lympus, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

John R. Gordon; Reep, Spoon & Gordon, Missoula, Montana

For Respondents:

Lane K. Bennett, Attorney at Law, Kalispell, Montana
(for John J. Gainey, Jr.)

Gary L. Graham; Garlington, Lohn & Robinson, Missoula, Montana
(for Dan Averill and Trails West Realty)


Submitted on Briefs: February 13, 1997

Decided:   May 27, 1997
Filed:


_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Greg Garrison (Garrison) brought this action seeking rescission of a land purchase agreement under which he bought property from John J. Gainey, Jr. (Gainey). He also sought damages from the real estate broker, Dan L. Averill (Averill), and Trails West Realty, Inc. After a six-day bench trial, the Eleventh Judicial District Court, Flathead County, entered its findings of fact, conclusions of law and judgment for the defendants. Garrison appeals and Gainey cross-appeals. We affirm.

Garrison presents the following issues on appeal:

1. Did the District Court abuse its discretion in denying Garrison's motion for a mistrial?

2. Did the District Court err in finding that Averill and Gainey fully advised Garrison of the easement?

3. Are the District Court's findings that Averill met the standard of care in disclosing his agency relationship with Gainey to Garrison and in keeping Garrison properly informed clearly erroneous?

4. Did the District Court err in determining that Garrison had assumed the risk by not reading the easement?

5. Are the District Court's findings that Garrison was not damaged clearly erroneous?

The issue in Gainey's cross-appeal is whether the District Court erred in failing to award him attorney fees against Garrison.

Background

In 1989, Gainey acquired Lots 4, 5, and 6 (the property) in the Crag Moor Addition, a platted subdivision on Flathead Lake in Flathead County, Montana. Gainey constructed a large log home, a boat dock, and other improvements on the property. Gainey's deed provided that the property was subject to a perpetual easement in favor of the owners of Lots 5 through 19 of Crag Moor Addition,

over and across the existing roadways on Lots 3 and 4 of Block 1 of said Crag Moor (excepting private driveways) for ingress and egress to and from FLATHEAD LAKE and the perpetual right and easement to use the existing dock, parking lot, swimming areas and swimming deck thereon, which easement is not exclusive but must be exercised with respect to the rights of other persons lawfully using said lands and facilities.

The shoreline where the easement is located has large natural rocks which prevent launching anything other than a very lightweight boat or canoe. When the easement was created, a swimming platform and a large dock existed adjacent to Lots 3 and 4. Both the swimming platform and the dock had been destroyed by the time Gainey purchased the property.

Averill is the owner of Trails West Realty, Inc. He sells real estate on Flathead and Whitefish Lakes and other recreational property in the Flathead Valley. In the spring of 1992, Averill met Garrison at the Flathead Valley home of a mutual acquaintance. Garrison, a longtime resident of California, was interested in purchasing property in the Flathead Valley.

Through Averill, Garrison submitted an offer to purchase Flathead Valley property known as the Skaggs Lake property. Subsequent negotiations for his purchase of the Skaggs Lake property were unsuccessful.

In early May 1992, Averill showed Garrison Gainey's property on Flathead Lake. Averill did not have a listing agreement on Gainey's property at the time, but he knew that Gainey was interested in selling it. Through Averill, Garrison made a $1.2 million offer to purchase the property in a turn-key sale which would include most of the personal property on the premises. When Averill took the offer to Gainey, Gainey counteroffered to sell for $1.25 million. He also told Averill about the easement for the other lots in Crag Moor Addition, and about the dock and swimming platform which had existed at the time of the easement but had since washed out. Gainey told Averill he had never seen any of the lot owners using the easement.

That same evening, Averill conveyed Gainey's counteroffer and the information about the easement to Garrison. Averill told Garrison that, when Garrison received a title insurance policy, he would have an opportunity to review the easement and decide

what to do about it. Averill advised Garrison that if he wanted to back out of the transaction because of the easement, he could do so. At the same time, Averill explained to Garrison that he worked for Gainey as the seller, that he had a fiduciary relationship with Gainey, and that Gainey would pay his commission. Garrison accepted Gainey's counteroffer.

Averill and Garrison returned to the Gainey property the following day. They went through the house in detail, with Gainey pointing out items of personal property he would be taking when he left. Outside, Gainey pointed out the boundary stakes for the property and explained that the other lot owners had an easement to come onto the area where the old dock had been. The access road for the easement, although somewhat grown over with weeds, was apparent. After that visit, Garrison returned to California.

Before the closing on June 1, Averill and Garrison communicated several times about the terms of the turn-key sale, and Averill gave Garrison a written inventory of the personal property to be included in the sale. Averill read the easement language to Garrison over the telephone and advised Garrison to consult an attorney regarding the extent of the easement and whether it could be extinguished, as Garrison was interested in doing. Garrison did not want to incur the cost of an attorney and, instead, asked Averill to get an informal opinion from his attorney. When Averill's attorney was unwilling to provide such an opinion without further research and study, Averill called the Flathead Regional Development Office. He was advised that, under local regulations, the lot owners might have difficulty in obtaining permission to build a new dock and, if they got permission, the dock would be limited in size. Averill conveyed this information to Garrison.

On June 1, just prior to the closing, Averill and Garrison again walked the property with Gainey. Averill had the copy of the deed showing the easement with him, and Gainey again informed both Averill and Garrison that, to his knowledge, the easement was not being used. The closing took place as planned.

Within a few weeks after the closing, some Crag Moor Addition lot owners held a barbeque and bonfire on the easement near the lake, placing a picnic table and stone fire circle on the easement. Garrison later discovered the evidence of this use. He also received a letter from an attorney representing the Hughes Bay Corporation, which provided water for the Crag Moor Addition lots, asserting the lot owners' rights to use the easement.

Garrison brought this suit seeking rescission of the purchase agreement under which he bought the property and damages. He alleged fraud and failure of consideration and requested rescission against Gainey, and alleged fraud, constructive fraud, negligence and negligent representation against the other defendants.

The District Court, sitting without a jury, issued detailed findings, conclusions and judgment in favor of the defendants. The court ordered that each party bear its own attorney fees, but that the defendants recover their costs of suit.

Issue 1

Did the District Court err in denying Garrison's motion for a mistrial?

Our standard in reviewing a district court's denial of a motion for a mistrial in a civil case is whether the district court abused its discretion. Dees v. American Nat. Fire Ins. Co. (1993), 260 Mont. 431, 443, 861 P.2d 141, 148.

Trial of this case began on March 14 and recessed on March 17, 1994, pending the setting of a date for its continuation. Trial subsequently was set to reconvene on October 31, 1994, but was rescheduled with the consent of all counsel to December 21, 1994. In November of 1994, Garrison moved for a mistrial because of the delay in completing the trial and because the reconvened trial would deal only with the defendants' cases; he had completed presentation of his case-in-chief during the four days of trial in March. He argued that this delay would substantially prejudice him.

The court denied Garrison's motion and trial resumed on December 21 and 22, 1994. Post-trial briefs and proposed findings were filed approximately one month later and the District Court's findings, conclusions and judgment were entered in April of 1996.

Garrison contends that the District Court's grasp of the issues and evidence was dulled by the delay in completing the trial. The only factual basis he asserts for this claim is that Averill's proposed findings and conclusions appear to have formed the pattern for the court's ultimate findings and conclusions.

It is clear that the time lapse between the opening of trial and the entry of judgment in this case was lengthy. The only time frame relevant to Garrison's mistrial motion, however, is the nine-month delay between the beginning and end of the trial, and Garrison contributed to, and expressly acquiesced in parts of, that delay. In its denial of Garrison's motion for a mistrial, the District Court noted that it had relied on counsel to estimate the number of days needed for the trial and had allotted the estimated amount of time, from March 14 through March 17, accordingly. Garrison's presentation of his case-in-chief consumed almost all of the four days originally allotted for the entire trial.

In July of 1994, after the court ruled on motions presented at the conclusion of Garrison's case, it scheduled the trial to continue on October 31, 1994, the next available date on the court's calendar. On August 4, 1994, and with the consent of all counsel, the District Court reset trial to continue on December 21, 1994. Garrison did not move for a mistrial until November 1994.

On this record, it is clear that Garrison consented to the December date for continuation of the trial, moved unsuccessfully for a mistrial three months later based on the delayed trial date, and now seeks to put the District Court in error for denying his mistrial motion. As a general rule, we will not put a trial court in error for a procedure in which the appellant acquiesced or participated or to which no objection was made. Hando v. PPG Industries, Inc. (1995), 272 Mont. 146, 150, 900 P.2d 281, 283 (citations omitted). Yet that is precisely what Garrison seeks to do here, on a "one step removed" basis. Moreover, Garrison cites no authority under which a mistrial motion must be granted due to a delay of nine months in completing a bench trial. Nor does he establish that he was prejudiced by the delay in completing the trial. We will not join Garrison in "assuming" that the District Court's memory was dulled as a result of this delay.

We take note of Garrison's references to the overall delay between the opening of trial and the entry of judgment. That period of delay, however, is not relevant to the mistrial issue and is not raised as a separate issue. In any event, Garrison advances no authority requiring a mistrial in a civil case due to an overall delay in judgment such as the delay which occurred in this case. Similarly, Garrison's contentions about the District Court's partial adoption of Averill's proposed findings and conclusions are not relevant to the mistrial issue and are not raised as a separate issue.

We hold that the District Court did not abuse its discretion in denying Garrison's motion for a mistrial.

Issue 2

Did the District Court err in finding that Averill and Gainey fully advised Garrison of the easement?

Garrison claimed fraud by both Gainey and Averill for failing to disclose to him the "true facts" concerning the extent of the easement and that its owners were "actively and aggressively asserting their right to it." He further claimed that Averill's failure to make full disclosure concerning the easement violated the Montana Real Estate Board's regulations governing licensed brokers and constituted constructive fraud.

As to the adequacy of Averill's and Gainey's disclosures regarding the easement, the District Court found:

Averill and Gainey fully advised Garrison of the existence of the easement and Averill conveyed to Garrison all of the information Gainey had provided. None of the information Gainey provided to Averill was incorrect.

In arguing this issue, Garrison relies on the letter from the Hughes Bay Corporation as evidence that the lot owners not only claimed the right to use the easement, but claimed active rights to conduct picnics and bonfires on it. He asserts that this differed from what Gainey and Averill had told him. He also relies on testimony by two lot owners that they believed they were entitled to cross Lot 5. Garrison further cites evidence that Gainey

knew about the lot owners' claims during a Flathead County Commissioners' meeting in March of 1990. He argues that, in order to properly support the court's conclusion that there was no intentional misrepresentation or concealment and that the conduct of Averill and Gainey did not constitute either actual or constructive fraud, there should have been a finding that Gainey disclosed all material facts to Averill and to him. Finally, he argues that fraud findings would have been justified by the evidence he presented.

The extent of the lot owners' rights under the easement is determined by deed, not by the beliefs of the lot owners. See Bridger v. Lake (1995), 271 Mont. 186, 191, 896 P.2d 406, 408. Although Garrison points out that easements can be modified other than by deed, such as by prescription, he cites no evidence that such modification occurred in this case. We note that the District Court found that the placement of the picnic table and fire ring on the easement was "clearly outside the scope of the use granted by the easement and was, arguably, a trespass."

As to the argument that Gainey failed to inform Averill and Garrison of use of the easement, several lot owners testified at trial that they had planned to build a boat launch on the easement and had discussed that plan at a county commission meeting in March of 1990 which Gainey attended. Discussion of plans for future use of the easement at the 1990 meeting does not constitute actual use, however; nor did it mean that the lot owners could carry out the plans within the terms of the easement or local regulations. Further, Garrison did not produce evidence that the lot owners ever made application to the county to build a boat launch.

Gainey's report to Averill and Garrison that, to his knowledge, the easement was not used was consistent with his testimony at trial. It also was supported by the testimony of the owner of Lots 2 and 3, Crag Moor Addition, from 1987 to 1991, who stated that he was retired and at home "three hundred sixty-four days a year," and had not observed any use of the easement, except by Gainey, during those years. Neither post-sale use and assertions of right nor a statement of a "plan" at a 1990 meeting controverts Gainey's statements regarding lack of any use of the easement--to his knowledge--during the time he owned the property.

This Court's standard of review of a district court's findings of fact is whether those findings are clearly erroneous. Rule 52(a), M.R.Civ.P. Findings are clearly erroneous if they are not supported by substantial evidence, if the court has misapprehended the effect of the evidence, or if a clear and definite mistake has been committed. Schaal v. Flathead Valley Community Coll. (1995), 272 Mont. 443, 446-47, 901 P.2d 541, 543.

The record before us contains substantial credible evidence in support of the District Court's findings that Averill and Gainey fully advised Garrison of the existence of the easement, that Averill conveyed to Garrison all the information Gainey provided, and that none of the information Gainey provided to Averill about the easement was incorrect. Indeed, Garrison does not contend otherwise.

Garrison argues that the facts in Parkhill v. Fuselier (1981), 194 Mont. 415, 632 P.2d 1132, are similar to those in this case. We disagree. In Parkhill, the sellers represented to the potential buyers that property in which the buyers were interested was served by a community water system. The broker assured the buyers there was no problem with the water system and promised to provide documentation, but did not do so. After the sale closed, the owner of the well shut down the water system and the buyers were forced to pay for a well, because no community well agreement existed. The buyers sued, alleging innocent misrepresentation regarding the water supply by the sellers and their justifiable reliance on the misrepresentation. At the trial, the sellers' defense was based on an independent investigation clause in the contract for deed under which the property was sold. The district court found that the buyers had justifiably relied on the representations about the water supply and rejected the investigation clause defense. Parkhill, 632 P.2d at 1134. On appeal, we determined that substantial evidence supported the finding of justifiable reliance by the buyers. Parkhill, 632 P.2d at 1135.

Here, in contrast, the District Court found that the easement and its scope were fully disclosed to Garrison and that the information as to nonuse was correct. These

findings, like the contrary findings in Parkhill, are supported by substantial credible evidence. That the record in Parkhill supported findings different from those made by the District Court here is totally irrelevant to this case.

After reviewing the record, we hold that the District Court's finding that Averill and Gainey fully advised Garrison of the easement is not clearly erroneous.

Issue 3

Are the District Court's findings that Averill met the standard of care in disclosing his agency relationship with Gainey to Garrison and in keeping Garrison properly informed clearly erroneous?

Garrison contended that he considered Averill his agent, that he relied on Averill to represent his interests and that Averill was aware of his reliance. He contended that Averill undertook to provide legal advice to him regarding the validity, extent, quality and nature of the easement and failed to advise him to seek legal advice when his interests required it. He asserts that the District Court should have found that Averill's conduct constituted fraud and constructive fraud and that Averill negligently misrepresented the easement.

The District Court found that "Averill fully advised Garrison before Garrison was committed to the transaction that Averill was acting as the agent of Gainey and not of Garrison." It also found that "Averill used reasonable care in his investigation of the condition of the premises and used appropriate forms for the completion of the transaction." The court relied on the testimony of Averill and his expert, Jerry Ford, in making these findings.

As set forth above, we review a district court's findings of fact under the clearly erroneous standard. See Rule 52(a), M.R.Civ.P.; Schaal, 901 P.2d at 543. Here, it is clear that substantial evidence supports the District Court's findings about Averill's disclosure of his agency relationship with Gainey and the adequacy of his performance in relation to the applicable standard of care. Indeed, Garrison does not contend that these findings are clearly erroneous. Rather, he first contends that the District Court erred by disregarding the testimony of his expert witness. He also contends that the evidence would have supported findings that Averill violated the standard of care, was negligent and proximately caused Garrison's damages. We address his contentions in turn.

Garrison is correct in stating that his expert, Merilynn Foss, testified that Averill had not met the standard of care applicable to a real estate broker in several regards. He is incorrect, however, in asserting that the District Court disregarded Foss' opinion. The court specifically referenced Foss' testimony in its findings. For example, Foss having testified that Averill breached the standard of care in failing to document his disclosure to Garrison of his agency relationship with Gainey, the court noted her subsequent admission that use of disclosure forms was not mandatory. The District Court clearly did not overlook Foss' testimony and Garrison cites no authority under which a trial court must catalog the entire testimony of an expert witness whose testimony is controverted by an opposing expert. Nor, of course, is a trial court obligated to accept the testimony of one witness over that of another. Where there is conflicting evidence, it is within the province of the trier of fact to weigh the evidence and determine the credibility of witnesses; we will not substitute our judgment for that of the trier of fact on such matters.

Rule 52(a), M.R.Civ.P.; State v. Shodair Hosp. (1995), 273 Mont. 155, 164, 902 P.2d 21, 26.

Garrison also contends that there is sufficient evidence in the record to support District Court findings, which were not made, that Averill violated the standard of care, was negligent, and proximately caused Garrison's damages. However, the existence of evidence which might support a finding of fact does not require a district court to make that finding. Yellowstone Basin Properties v. Burgess (1992), 255 Mont. 341, 352, 843 P.2d 341, 348. Our standard of review is, in the first instance, whether the findings made are supported by substantial evidence. See Schaal, 901 P.2d at 543. As noted above, it is undisputed that the findings at issue here are supported by substantial evidence.

We hold that the findings of the District Court that Averill met the standard of care in disclosing his agency relationship with Gainey and in keeping Garrison properly informed are supported by substantial evidence and are not otherwise clearly erroneous.

Issue 4

Did the District Court err in determining that Garrison had assumed the risk by not reading the easement?

The District Court concluded that Averill's duty to Garrison was to disclose the existence of the easement, which he did, and by his then proceeding with the purchase of the property in spite of that knowledge, Garrison assumed the risk of any subsequent damages he allegedly sustained.

Assumption of the risk is a tort term ordinarily associated with personal injury actions. It was not pled as a defense to Garrison's action. As a result, Garrison is correct in asserting that the District Court's reference to assumption of the risk in this case is inappropriate and incorrect.

Not all error is reversible error, however. Reversible error is error that affects a party's substantial rights. Woolf v. Evans (1994), 264 Mont. 480, 488, 872 P.2d 777, 782. Here, the District Court did not continue with any further analysis or conclusion based upon its reference to assumption of the risk. Nor does the erroneous reference affect the remainder of the court's findings, conclusions and judgment. Finally, the trial court having found that Averill did not breach any duty to Garrison, and this Court having concluded above that those findings were not clearly erroneous, Garrison's claims against Averill were effectively rejected. Any subsequent error did not affect Garrison's substantial rights. Therefore, we hold that the District Court's reference to assumption of the risk was harmless error.

Issue 5

Are the District Court's findings that Garrison was not damaged clearly erroneous?

Garrison does not refer to a specific finding in arguing this issue and we observe that the District Court made three findings relating to the lack of any damages sustained by Garrison. We need not scrutinize those findings, however, since the court determined that none of the defendants was legally liable under any of Garrison's claims and we concluded above that the District Court did not commit reversible error with regard to any liability-related matter raised on appeal. Absent liability for any damages, any error in damage-related findings would be irrelevant and harmless. Therefore, we need not reach the merits of this issue.

Cross-Appeal

Did the District Court err in failing to award Gainey attorney fees against Garrison?

Gainey contends that the District Court's determination that he and Garrison should pay their own attorney fees is erroneous because he is entitled to a fee award against Garrison pursuant to the buy-sell agreement and the reciprocal attorney fee provision of 28-3-704, MCA. We disagree.

The buy-sell agreement contains two attorney fee provisions. Paragraph 5 provides:

Time is of the essence of this agreement and of this clause. If any payment to be made hereunder or any other condition of this agreement is not timely made, then this contract, at the option of the party who is not in default, may be terminated and the non-defaulting party may recover damages and reasonable attorney's fees to be awarded by the court in any action for a specific performance or otherwise.

Pursuant to the plain language of this paragraph, a party bringing a successful action for default or breach of the agreement would be entitled to request attorney fees. Paragraph 6 of the agreement provides:

In the event of default by the seller, and if the purchaser elects to treat the contract as terminated, then all payments made hereunder shall be

returned to the purchaser.  In the event of default by the purchaser, and if the seller elects to treat the contract as terminated, all payments shall be forfeited and retained on behalf of the seller as liquidated damages.  In the event, however, that the non-defaulting party elects to treat this contract as being in full force and effect, the non-defaulting party shall have the right to an action for specific performance and shall be entitled to recover damages, including a reasonable attorney's fee to be awarded by the court.

Pursuant to this paragraph, a party faced with a default under the agreement could sue for specific performance of the agreement and, upon prevailing, would be entitled to recover attorney fees.  In the event of a successful defense against the types of actions specified in paragraphs 5 and 6 of the buy-sell agreement,  28-3-704, MCA, would vest the defendant with the same rights to attorney fees as are expressly provided to a successful plaintiff in the agreement.

Here, however, Garrison did not sue Gainey for default or breach of any term of the agreement; nor did he sue Gainey for specific performance of the agreement following such a default.  Garrison sued Gainey for rescission of the buy-sell agreement based on fraud and failure of consideration.  Therefore, it is clear that the attorney fee provisions in paragraphs 5 and 6 of the buy-sell agreement do not apply to Garrison's action against Gainey and, as a result, they cannot support a "reciprocal" right to attorney fees in Gainey pursuant to  28-3-704, MCA.

We hold that the District Court did not err in failing to award Gainey attorney fees against Garrison.

Affirmed.

/S/  KARLA M. GRAY

We concur:

/S/  J. A.  TURNAGE
/S/  WILLIAM E. HUNT, SR.
/S/  TERRY N. TRIEWEILER
/S/  W. WILLIAM LEAPHART