No. 87-230

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988


CANDACE WAGNER,

Plaintiff and ~~Appellant~~, Respondent

-vs-

EARL CUTLER and the Corporation of the
Presiding Bishop of the CHURCH OF JESUS
CHRIST OF THE LATTER-DAY SAINTS, a Utah
Corporation,

Defendants and Appellants.


APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Michael C. Coil, Bozeman, Montana

For Respondent:

Morrow, Sedivy & Bennett; Lyman H. Bennett, III,
Bozeman, Montana


Submitted on Briefs:  May 19, 1988

Decided:  June 15, 1988

Filed: JUN 1 5 1988

*Ethel M. Harrison*

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendant, Church of Jesus Christ of the Latter-Day Saints (LDS) appeals the January 20, 1987, bench decision of the Eighteenth Judicial District Court, Gallatin County. The court ordered that LDS pay $15,203.19 to plaintiff Wagner in compensation for defects in a house which LDS sold to Wagner. We affirm.

LDS raises four issues for our review:

1. Did the District Court properly consider the "as is" language and the "independent investigation" clause contained in the Earnest Money Receipt and the Special Warranty Deed?

2. Did the District Court properly grant amendments to the pleadings seven months after the close of the trial?

3. Is the District Court's decision regarding negligent misrepresentation supported by substantial evidence?

4. Did the District Court properly consider the duty of LDS to disclose defects and the defense of contributory negligence?

LDS employed Earl Cutler as an educator in Bozeman, Montana. Cutler owned a three-quarter-acre lot in Gallatin County. In July of 1973, Cutler hired several contractors to build a house on the lot. One of the contractors was CAPP Homes, which erected the framing, doors, windows and unshingled roof. After occupying the new house in the summer of 1975, Cutler experienced problems with the septic system, the lawn sprinkler system, and flooding in the basement.

In July of 1980, LDS transferred Cutler to Missouri. Cutler tried to sell his house, but was unsuccessful. The house remained vacant for over a year. In the fall of 1981, LDS briefly inspected the house and bought it from Cutler. LDS never occupied the house.

2

On October 28, 1981, LDS entered a listing agreement with realtor Paul Lytle. The listing agreement stated that the house was four years old and well-built. LDS disclosed no defects to the real estate agent, as shown by this clause:

> To the best of my knowledge, the follow-
> ing items are in good repair and working
> condition, and I am unaware of anything
> wrong with the foundation, roof, siding,
> wiring, drainage, heating, plumbing or
> sanitation system except: none

Realtor Lytle sent for publication in the Multiple Listing Service an advertisement relating to the property in dispute. The advertisement sent to Multiple Listing Service, which was published in substantially the same wording, read in essential part as follows:

> Remarks: Excellent home with Timberline
> wood burner on brick hearth on upper
> level & large rock fireplace in family
> room on lower level. Large deck on two
> sides. Basement level needs some fin-
> ishing & carpet, but is mostly done.
> Well suited for a large family.

In April of 1982, Wagner arrived in Bozeman from Los Angeles. She was interested in buying a house. Wagner contacted Carmen Murphy, a real estate agent for ERA Landmark of Bozeman. Murphy showed the LDS house to Wagner. She also provided Wagner with a copy of the ad in the Multiple Listing Service. Murphy knew that the house was a "CAPP Home" but did not disclose that fact to Wagner. Murphy represented to Wagner that the house was "well built" according to "code." Murphy also gave Wagner a document from the Gallatin County Sanitarian representing the document to be an approval by Gallatin County of the septic system. Wagner liked the house and toured it several more times.

After some negotiations, Wagner and LDS agreed on a purchase price of $78,500. On July 15, 1982, the sale was

3

closed. LDS received $15,500 down. The balance of $63,000 was carried by LDS on a contract for deed at 13 percent with a balloon payment due after five years.

Upon taking possession, Wagner encountered numerous problems with the house. Wagner then sued to recover damages for misrepresentation, violation of duty to inspect and disclose defects, and breach of the implied warranty of habitability. The court dismissed the breach of habitability cause. During the trial, the court also dismissed defendant Cutler from the case.

Trial was held without a jury on January 30, 1986, and subsequently continued until June 5, 1986, when all the testimony was completed. On October 29, 1986, the District Court found that many of the defects were noticeable prior to Wagner's purchase of the house. These noticeable defects included the unfinished basement, unfinished steps leading to the basement, light fixtures which were not in their sockets, cracks in the patio pavement, and incomplete heating ducts. The court disallowed recovery for items which were clearly observable upon inspection of the residence.

However, the court found twenty-three other defects which were latent and undiscoverable prior to occupancy. The court further found that LDS was not aware of the latent defects and that LDS performed no positive acts of wrongdoing. The latent defects included a hazardous chimney, poor ceiling insulation, broken sewage pump, and faulty lawn sprinkler system.

On April 7, 1987, the court amended its conclusion in response to a motion by LDS. The court concluded that Wagner relied on LDS's representation that the home was "well built" to "code," and that LDS failed to exercise reasonable care in communicating the true condition to Wagner. The court awarded Wagner $15,203.19 in damages.

4

Issue 1. "As is" and "independent investigation" clauses.
a. Earnest money receipt.

The earnest money receipt signed by LDS and Wagner contained the following clauses: "Purchaser agrees to accept property and and appliances in 'as is' condition unless otherwise provided for . . ." and "Purchaser enters into this agreement in full reliance upon his independent investigation and judgment." (Emphasis added.)

LDS contends that Wagner agreed to the "as is" clause and therefore bought the property subject to any defects, both observable and latent. LDS also asserts that it had no knowledge of any defects. LDS argues that the "independent investigation" clause and "as is" clause should "trigger the purchasing party's obligation to thoroughly investigate the property to his own satisfaction" and "dispel any misconception that the buyer had the right to rely on any information supplied by the seller." LDS concludes that Wagner failed to thoroughly investigate and is now barred from any recovery.

In analyzing this issue, we note that an "independent investigation" clause does not preclude justifiable reliance by a buyer upon the misrepresentations of the seller and its realtor. Parkhill v. Fuselier (Mont. 1981), 632 P.2d 1132, 1135, 38 St.Rep. 1424, 1427.

In the instant case, the court found no willful misrepresentation: ". . . the Defendant, Church, did not construct said premises and was no more aware of the latent defects than was the Plaintiff, that the Church performed no positive wrongful acts . . ." However, LDS bears responsibility for the actions of its real estate agent. Section 28-10-602, MCA. Wagner relied on the material misrepresentations of LDS as they appeared in the written listing agreement prepared by LDS's realtor. Wagner was under no additional duty to discover the latent defects in the house. Parkhill v. Fuselier,

5

632 P.2d at 1135, 38 St.Rep. at 1427. We find that the District Court considered the clauses and properly held that Wagner was not responsible for the latent defects.

b. Special Warranty Deed.

LDS conveyed the real estate to Wagner in a document entitled, "Special Warranty Deed," which stated in part: ". . . Grantor, of Salt Lake County, State of Utah, hereby conveys and _warrants_, against all acts of _itself_, and none other, to all claiming by, through or under it to CANDACE A. WAGNER, Grantee, . . . the following parcel . . ." (Emphasis added.)

LDS contends that the warranty clause limits the liability of LDS to its own acts. LDS contends that it did not cause the defects and is therefore not responsible for the defects. LDS concludes that the warranty clause should have alerted Wagner, who "should bear the responsibility of having improperly proceeded in light of the Special Warranty Deed, and the language contained therein."

In reviewing this issue, we note that all sale documents were drafted by LDS or its agent. Wagner relied on LDS's misrepresentations to her detriment. In the plain language of the contractual clause, LDS warranted the house. Having done so, LDS contractually obligated itself to the veracity of the warrant. Section 28-3-401, MCA. Any uncertainty over "what was warranted" in the deed should be interpreted most strongly against the party who drafted it. Section 28-3-206, MCA. We find that the District Court properly considered the language of the deed and held LDS liable for the latent defects.

6

Issue 2. Amendments.

The District Court handed down its judgment on January 20, 1987. On January 29, 1987, LDS moved the court to amend its findings of fact and conclusions of law, and to strike references to the implied warranty of habitability. A hearing was held on the motion on February 9, 1987. The District Court amended its conclusions on April 7, 1987, stating that LDS had "failed to exercise reasonable care or competence in obtaining and/or communicating" information about the house's condition to Wagner. LDS contends that the District Court procedurally erred by not amending its conclusions in the manner requested by LDS.

Amendments to judgments are discussed in Rule 52(b), M.R.Civ.P., which states: "Upon motion of a party made not later than 10 days after notice of entry of judgment the court _may_ amend its findings or make additional findings and _may_ _amend_ _the_ _judgment_ accordingly. . ." (Emphasis added.)

LDS filed its motion and the court responded. The amended conclusions were supported by the record. The decision to amend and manner of amendment lie squarely within the discretion of the court. The court was under no obligation to tailor its amendment to fit LDS's specifications. We find that the court properly amended its judgment.

Issue 3. Negligent Misrepresentation.

As noted above, the District Court concluded that LDS failed to exercise reasonable care in communicating the house's condition to Wagner. LDS contends that it did not have adequate notice of the theory of negligent misrepresentation, and was thereby precluded from preparing an adequate defense.

We disagree. The District Court discussed negligent misrepresentation nine months before trial. In its order

7

with memorandum dated April 18, 1985, the court discussed Wagner's complaint and stated: "Together, Counts I and II sufficiently state a cause of action for negligent misrepresentation." LDS's trial brief dated January 30, 1986, specifically mentions and discusses negligent misrepresentation. The theory of negligent misrepresentation was mentioned again during trial in January 1986, when Wagner's counsel stated: "The theory being present is actually fraud and misrepresentation, constructive fraud, negligent misrepresentation."

Negligent misrepresentation was mentioned repeatedly throughout the proceedings. We hold that LDS had adequate notice of the theory.

LDS next contends that the facts do not support the elements of negligent misrepresentation. LDS asserts that Wagner failed to establish the proper standard of care through some type of expert testimony, and therefore failed to prove that LDS deviated from the standard. LDS argues that it never knowingly supplied false information and, therefore, was not negligent.

We are guided on this issue by Brown v. Merrill Lynch, Pierce, Fenner, Etc. (1982), 197 Mont. 1, 12, 640 P.2d 453, 458-459, quoting the Restatement of Torts 2d § 552 (1977), where we noted:

> "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." [Emphasis added.]

8

The "standard of care" testimony was not necessary. The test for the admissibility of expert testimony is whether the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact. Vandalia Ranch v. Farmers Union Oil & Supply (Mont. 1986), 718 P.2d 647, 650, 43 St.Rep. 790, 793; Rule 702, M.R.Evid. The instant case presented no concept or requirement of specialized knowledge beyond the cognizance of the judge.

LDS had a duty to obtain and communicate information on the true condition of the house. It failed to do so. We hold that the District Court properly concluded that LDS failed to exercise reasonable care.

Issue 4. Contributory negligence.

LDS asserts that it, like Wagner, bought without knowledge of latent defects. LDS asserts that Wagner's unreasonable failure to investigate constituted contributory negligence.

In analyzing this issue, we note that the District Court only allowed Wagner recovery for latent defects and denied recovery for obvious defects. In effect, the court found Wagner accountable for the defects a reasonable buyer would have noticed. With that distinction, the court properly addressed Wagner's contributory conduct in the transaction.

In conclusion, the District Court balanced the responsibilities of seller and buyer in the sale. The court carefully apportioned the burden of the defects between the parties. The court's decision was well reasoned and accomplished a just result. We hold that the District Court's decision was proper and fully supported by the evidence in the record.

Affirmed.

_____
Chief Justice

We concur:

_John Conway Harrison_

_[signature]_

_John C. Sheehy_

_William E. Hunt Sr._

Justices