## CIRCUIT COURT OF CLARKE COUNTY

Ralph E. Sullivan et ux.

v.

Reliable Realty et al.

May 22, 1989

Case No. (Law) 2121

By JUDGE ROBERT K. WOLTZ

This action is before the court on the various demurrers of the several defendants to the motion for judgment of the plaintiffs concerning a sale of a residential building lot to the latter. The motion for judgment makes general allegations in twenty-seven paragraphs, followed by an additional ninety-three paragraphs divided among fourteen counts. One group of defendants files demurrer to the entire motion for judgment, another group as to four of the counts, and the third group as to six of the counts.

In view of the principle that a demurrer admits all material facts properly pleaded meaning "the facts admitted as those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged," *Lentz v. Morris*, 236 Va. 78 (1988), quoting *Rosillo v. Winters*, 235

Va. 268 (1988), a brief summary of the facts alleged in the motion for judgment is in order.

Plaintiffs (Sullivan) in 1987 contracted to buy and later purchased a subdivision lot from the defendants Moore. Defendant Phillips was real estate agent for Moore in the transaction, the agent's broker was Forrester, and the real estate agency Reliable Realty (collectively Reliable). Phillips showed Sullivan what she said was the lot, stating she knew where the property lines were, pointing out certain stakes and by hand motions and words indicated where the boundaries of the lot were. Sullivan desired to purchase the area so indicated, relying upon Phillips' representations as to boundaries, and after an offer and counteroffer, entered into a contract of purchase with the seller, the contract description of the property being Lot 2-F of Carefree Acres Subdivision. At settlement of the sale transaction, Sullivan asked seller to describe the boundary lines of the lot, whereupon the seller described it the same as the real estate agent had. Sullivan, who did not order a survey, then applied to a lending institution which did not require a survey of the property nor did the real estate agent recommend a survey be made. After purchasing the property and relying on the representations as to its location made by both Reliable and seller, Sullivan expended sums to build a house and make other improvements on the property. Subsequently, a neighboring landowner informed Sullivan of his belief that the latter had installed these improvements on the neighbor's property. The indication of boundary lines by the real estate agent and seller are alleged as incorrect, and in reliance thereon, Sullivan has suffered damages by virtue of mislocating his improvements.

Sullivan also sues Clarke County Properties (Clarke Properties), presumably a partnership, and the three individuals constituting it. Sullivan alleges that Clarke Properties was the property manager of the subdivision since its inception and to the time of Sullivan's purchase; that it had placed markers to establish the corners of individual lots of the subdivision; that a survey later made by Sullivan showed that a corner marker had been incorrectly placed or had been moved, and had it been in its proper place, Sullivan's encroachment on the neighboring lot would have been less serious.

120

## I.

Counts I and VII respectively charge Reliable and seller in fraud and deceit, charging them with intentional misrepresentations and failures to disclose the material facts of the transaction relating to the boundaries of the lot upon all of which Sullivan justifiably relied. For these intentional fraudulent acts, Sullivan seeks compensatory and punitive damages. No demurrer is filed to these counts.

## II.

In Counts II and III, Reliable is charged in the former with negligent misrepresentation of fact and negligent nondisclosure of fact, and in the latter count, with innocent misrepresentation and nondisclosure. The distinction between the two is somewhat blurred by an allegation in the latter that Reliable as licensed realtor had a duty to ensure its representations were truthful but failed to discharge that duty. Nonetheless, these two counts are distinguishable from the count in fraud and deceit or actual fraud by the absence of any allegation of intent to defraud or deceive. Count VIII charges negligent misrepresentation and nondisclosure against the seller, but no account charges seller with innocent commission of those acts. Reliable and seller respectively demurrer to these counts. The demurrers are overruled.

The demurrants assert the doctrine of merger. In brief, the doctrine holds that a subsequent instrument of higher dignity supersedes or swallows up a prior instrument of lesser dignity. 12B Mich. Jur., *Merger*, § 2. Application of the doctrine here is varied in that essentially the terms of the written contract are asserted to have superseded any precedent oral understandings regarding the boundary lines. If the doctrine were of universal application, it is difficult to see how a claim of fraud in the inducement or procurement could be maintained. Cases stating the general principle of merger carry the qualification that no fraud be involved, e.g., "if there is no ingredient of fraud or mistake," *Oliver Refining Co. v. Portsmouth Cotton Oil Refining Corp.*, 109 Va. 513,

521 (1909); "and unaffected by fraud or mistake," *Woodson v. Smith*, 128 Va. 652, 656 (1920). The doctrine of merger does not make these allegations of fraud demurrable.

This is true though the counts demurred to do not charge actual fraud. While constructive fraud, which these counts appear to allege because the element of intent is absent, is a ground for relief in equity, in a large majority of American jurisdictions, it is not recognized as a ground for relief at law. This is because neither negligent nor innocent misrepresentations contain the element of intent to defraud. Courts in those jurisdictions recognize the conceptual difficulty of converting a nonintentional tort into an intentional one. 37 Am. Jur. 2d, *Fraud and Decent*, §§ 12 and 188.

Virginia, however, is in the minority, recognizing constructive fraud as well as actual fraud in proceedings at law. Though equity cases at times are cited in law actions for the principle, it is clear that constructive fraud will form the basis for an action at law. Technicalities are brushed aside with the practical proposition that the result to the party claiming injury is the same whether the result was brought about by actual or constructive fraud: "The real question in such a case is not what the party making the representation knew or believed, but was the representation false and the other party misled," and "[W]e perceive no difference in the principle involved in an action at law for damages and a suit in equity for rescission," *Trust Company of Norfolk v. Fletcher*, 152 Va. 868, 882 (1929), quoting earlier cases; and "Whether the representation is made innocently or knowingly, if acted on, the effect is the same. In one case the fraud is constructive, in the other it is actual." *Jordan v. Walker*, 115 Va. 109, 116 (1913). Both these cases were actions at law.

### III.

Counts IV and V charge respectively intentional infliction of emotional distress and negligent infliction of emotional distress by Reliable and seek compensatory and punitive damages under the former count and compensatory damages under the latter. Counts IX and X similarly charge the seller, and counsel for the latter indicated a desire

to file demurrers to them though none has as yet. The language of these counts is very similar and descriptive of an intentional tort, but their captions indicate claims of intentional and of negligent tort against each of the two defendants and will be treated accordingly. Regarding the negligent infliction of emotional distress, the following from *Celeste v. Bayliss*, Circuit Court of Frederick County, Law No. 4460 (July 23, 1986), may be helpful:

> [D]amages for mental anguish and suffering, emotional disturbance, fright and shock, all of which may be considered as falling under the generic heading of emotional distress, as a general rule at common law were not recoverable as a result of negligence unaccompanied by physical injury to the person. *Connelly v. Western Union Tel. Co.*, 100 Va. 51 (1902); *Chesapeake & Ohio Ry. Co. v. Tinsley*, 116 Va. 600 (1914). Assuming the alleged statement of the real estate salesman in this case was merely negligent, being more of a constructive fraud rather than an intentional or actual fraud, the general rule would bar the plaintiff's recovery unless one of the two Virginia exceptions exists.
>
> Where negligence without a contemporaneous tactile physical injury causes emotional distress, and by clear and convincing evidence, the emotional distress causes as a natural result a physical injury, recovery can be had. *Hughes v. Moore*, 214 Va. 27, 34 (1973). In this case no physical injury is alleged. The other exception is found in *Naccash v. Burger*, 223 Va. 406 (1982), which in itself is an exception to *Hughes*. In *Naccash* there was non-tactile negligence resulting in emotional distress but no resulting physical injury. The case is a generalized exception holding recovery available. It held the restrictions of *Hughes* and of *Womack v. Eldridge*, *infra*, established to prevent spurious claims did not apply as the emotional distress for which recovery was allowed could in no way be considered feigned or fraudulent. Here the plaintiff's claim does

not fall under the *Naccash* exception to *Hughes*, and it falls short of the *Hughes* requirement for physical injury, and so is not recoverable.

Different standards apply regarding intentional infliction of emotional distress, and the cited circuit court opinion may be helpful in that regard:

If the . . . statement were not merely negligent but constituted an actual fraud, then it was a willful and intentional tort. *Moore v. Jefferson Hospital, Inc.*, 208 Va. 438 (1967), held a demurrer improperly overruled where the defendant alleged a non-tactile intentional tort resulting in mental and physical injuries. The Court, quoting Annot. 64 A.L.R. 2d 100, acknowledged the existence of "an independent right to recover for grave mental distress intentionally or recklessly caused." *Womack v. Eldridge*, 215 Va. 338 (1974), held that: "[O]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress absent any bodily injury." At page 342, however, this right of recovery is conditioned on four elements:

"One, the wrongdoer's conduct was intentional or reckless. This element is satisfied where the wrongdoer had the specific purpose of inflicting emotional distress or where he intended his specific conduct and knew or should have known that emotional distress would likely result. Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality. This requirement is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved. Three, there was a casual connection between the wrongdoer's conduct and the emotional distress. Four, the emotional distress was severe."

There is some weakness in the allegations of intentional tort as relates to the first element mentioned in *Womack* as to specific purpose and intent to cause emotional distress. Also though proximate cause between the conduct of Reliable and the seller and the emotional distress of Sullivan is alleged, they appear to fall short of what this court takes to be an implied factor respecting the third element mentioned in *Womack*. That is the factor of time. Not only should there be causation *per se*, but in support of it, there should be a chronological explication of the causative event and the emotional distress resulting from it.

The causal connection and the chronology of events between cause and effect are intertwined. As stated in *Bowles v. May*, 159 Va. 419, 438 (1932), involving mental distress resulting in physical injury, such cases fall "within a class which is not favored," and it is essential that "a chain of unbroken causal connection between the alleged act and the physical injury" be shown. These observations apply with even more force where no physical injury is alleged as resulting from the emotional distress. Therefore, the time element between cause and effect seems an essential allegation because of the possibility of intervening causes and other factors impinging on matters as tenuous and subjective as emotional distress. Aside from stating that the effect followed the cause, there are no chronological allegations in the count.

Finally, in *Moore*, *Womack*, and *Naccash*, the emotional distress involved situations where extremely personal rather than merely financial sensitivities were invaded. In those cases, no other mode of recompense except for emotional distress was open to the plaintiffs. No doubt emotional distress can and does occur in business and commercial activities as a result of negligent or intentional acts of others, the possible instances of which are virtually limitless. Yet in those cases recompense is readily available on a purely economic basis or standard, rather than on one pitched purely on the bases of subjective personal sensitivities. The court is of opinion that to open the door of recovery for emotional distress further so as to present and encompass the very broad field of business and commerce is a step, at least in this case, which the law should not take. Where redress for purely

economic wrongs may be had, it would be unwise to superadd to that further redress for damaged personal sensitivities. The demurrers to the counts for emotional distress are sustained.

*Mirabile dictu,* there is no demurrer to Count VI charging Reliable with breach of fiduciary duty.

## IV.

Count XI charges seller with breach of contract and requests both compensatory and punitive damages for the breach, to which count seller demurs. The demurrer is sustained. The contract was for the sale of Lot 2-F of Carefree Acres. As to the breach, the count merely makes the conclusory allegation that there was one without any particularization regarding it. This is not surprising as from other allegations in the motion for judgment, it is clear that in conformance with his contract, seller did convey Lot 2-F and that Sullivan's injuries stem not for any breach of the contract but from the alleged misrepresentations, made prior to the contract, as to the boundaries of the lot for which misrepresentations Sullivan in several other counts sues in fraud. Action on contract and action on fraud are distinct from one another. In contract recovery is based on an express liability assumed by one in his contractual undertaking. Fraud is based on liability for violation not of an express undertaking but of a duty of "honesty and fair dealing which the law requires in one's transactions regardless of one's self imposed contractual obligation in the transaction." 37 Am. Jur. 2d, *Fraud and Deceit,* § 6.

## V.

Count XII seeks damages against Reliable and seller as a result of misrepresentation associated with the sale of the lot based on the provisions of § 18.2-216 making dissemination of deceptive or misleading information with intent to sell any item a crime. Not only is such action a crime but § 59.1-68.3 provides a remedy by civil action for violation of § 18.2-216. There is no averment in Count XII that the representation which Sullivan charges to be untrue or misleading was other than oral. By *Henry*

*v. R. K. Chevrolet, Inc.*, 219 Va. 1011 (1979), the law is settled that § 18.1-216 applies only to non-oral and excludes verbal representations or practices. Consequently, the demurrers of Reliable and seller to this count are sustained.

## VI.

Count XIII alleges violation by Reliable and seller of the Virginia Consumer Protection Act, Code § 59.1-196, *et seq.* The demurrers of the seller and Reliable to this count are sustained on the basis that they are excluded by definition from application of the Act. The pertinent provisions are found in § 59.1-198 as follows:

A. *"Consumer transaction"* means:
(i) The advertisement, sale, lease, or offering for sale or lease, of goods or services to be used primarily for personal, family, or household purposes . . . .
B. *"Goods"* means all real, personal, or mixed property, tangible or intangible.
C. *"Supplier"* means a seller or lessor who advertises, solicits, or engages in consumer transactions, or a manufacturer or distributor who advertises and sells or leases goods or services to be resold or leased by other persons in consumer transactions.

Under the statutory definition, this lot constituted "goods." These goods were advertised and sold and were clearly for personal or family purposes. But the seller was not a "supplier." By fair implication and inference from the motion for judgment, seller was merely a lot owner who likely had bought the lot for his own personal or family purposes and wished to dispose of it but was not a dealer in or in the business of selling lots. By definition, a supplier is one who is involved in consumer *transactions*, not one who is involved in an isolated, casual, occasional, and essentially private transaction. Reference to manufacturer or distributor in the definition of supplier and the Act as a whole show a legislative intent that its application be only to entities commercial

in nature which advertise, solicit, or engage in consumer transactions as a business. The defendant Reliable is engaged in commercial activity as a realtor, but it was not the supplier and is insulated from coverage by the Act by the fact that its principal was not a supplier as defined by statute. Consequently, the demurrers of Reliable and seller to this count are sustained.

## VII.

Count XIV, the final count, alleges that the defendants Clarke Properties were the property managers of Carefree Acres Subdivision; that there existed markers establishing the corners of the individual lots of the subdivision; that a resurvey showed one of the markers of the lot purchased by Sullivan was incorrectly placed; that if it had not been misplaced or moved to an incorrect location, "Plaintiffs would not have intruded upon the property of a neighbor to the extent the Plaintiffs did and therefore would not have encroached so seriously upon the real property of another"; that Clarke Properties "had exclusive possession, control, and management" of the property from the time the subdivision was developed until Sullivan's purchase; and that the resulting misplacement or incorrect relocation of the marker was negligent and a proximate cause of Sullivan's damages, which conduct was willful, intentional, and so outrageous as to support punitive damages. (Note that even if the marker had been in its correct location, there would still have been an encroachment on the neighbor's lot.)

Clarke Properties demurs, and the demurrer is sustained. Title to the lot in question was no longer in Clarke Properties, it having passed immediately or through successive conveyances to the defendant seller whom the motion for judgment shows was the owner of the lot at the time of Sullivan's purchase and that the owner of the adjoining affected lot was not Clarke Properties. There was no privity of contract existing between Clarke Properties and Sullivan. Though Clarke Properties is alleged to be the manager of the subdivision, there are no facts alleged to show that its management extended to lots of which it had divested itself of title or that in the event it was such a manager that its management responsibilities

extended to the continued proper maintenance of corner markers for such lots. There are no allegations that Clarke Properties initially or at a later time improperly located the corner marker, the location of which Sullivan alleges was the cause of his difficulties. The fact allegations are insufficient to show that the relationship of Clarke Properties to Sullivan gave rise to any cognizable duty owed by the former to the latter and no fact allegations but only conclusions to demonstrate willful intentional and outrageous wrong. To the extent any such duty is alleged, it is couched in conclusory terms and so likewise allegations of breach of duty and resulting damages.

For the foregoing reasons, the demurrers are variously sustained and overruled, and the plaintiff's motion to overrule and strike all demurrers is sustained in part and denied in part.

## VIII.

The remaining matter to be disposed of is the claim of Clarke Properties for sanctions under § 8.01-271.1. This statute enacted in 1987 is taken from Rule 11 of the Federal Rules of Civil Procedure. In the court's opinion, sanctions of this nature should be applied very cautiously. The right of litigants to seek redress in the courts and the responsibility of counsel to seek redress for their clients by the joinder of multiple parties and by advancing legal theories of recovery, even at times novel theories, should not be stifled. On the other hand, such liberty granted to litigants and their lawyers should not be construed as open season to sue anyone and everyone within sight or sound nor to give them license to assert legal theories with insubstantial factual underpinnings. Clearly, sanctions are not appropriate in every case merely because a demurrer has been sustained. Also, where the statutory provision has been trespassed upon the extent of that trespass is a proper consideration in the severity of the sanction imposed. After both hearing counsel argue the point and careful consideration of Sullivan's assertion of claim against Clarke Properties and of the statute, the court is of the opinion that there has been a transgression and imposes a sanction of $200.00 against plaintiff's counsel.