2000 Utah Ct. App. 200

Michael S. ROBINSON, Trustee of the Cardiomed, Inc. Profit Sharing Plan and Cardiomed, Inc. Money Pension Plan, Plaintiff and Appellant,

v.

TRIPCO INVESTMENT, INC.; Stephen L. Tripp; and Does 1 through 10, Defendants and Appellees.

No. 990490–CA.

Court of Appeals of Utah.

June 29, 2000.

Rehearing Denied Aug. 3, 2000.

Brett P. Johnson, McKay Burton & Thurman, and Lynn B. Larsen, Salt Lake City, for Appellant.

Donald J. Winder and Gerry B. Holman, Winder & Haslam, Salt Lake City, for Appellees.

Before JACKSON, Associate Presiding Judge and BENCH, and BILLINGS, JJ.

## OPINION

BENCH, Judge:

¶ 1 Appellant Michael S. Robinson, as Trustee of the Cardiomed, Inc. Profit Sharing Plan and the Cardiomed, Inc. Money Pension Plan (collectively "Cardiomed"), challenges the trial court's grant of summary judgment in favor of appellees on Cardiomed's claims of negligent misrepresentation and fraud in the sale of an apartment building. Cardiomed asserts: (1) a cause of action for negligent misrepresentation is not precluded by the merger doctrine; and (2) genuine issues of material fact exist, which preclude summary judgment on its fraud claim. We affirm in part and reverse in part.

## BACKGROUND

¶ 2 Because this is an appeal from a grant of summary judgment, we recite the facts in the light most favorable to the non-moving party.[1] *See Glover ex rel. Dyson v. Boy Scouts of Am.*, 923 P.2d 1383, 1384 (Utah 1996).

¶ 3 In 1978, Stephen L. Tripp Construction Company (Tripp Construction) built a fifteen-unit apartment building. Tripp Construction acted as the general contractor, and hired subcontractors to perform the actual construction. The building's plans and specifications called for a pan structural support system, but workers were not available to build that type of system. Tripp Construction therefore subcontracted to build a post-tension support system. Cardiomed contends that this type of system was not appropriate for this building.

¶ 4 In February 1992, Cardiomed and Tripco Investment, Inc. (Tripco) entered into an Earnest Money Sales Agreement in which Tripco agreed to sell the apartment building to Cardiomed. Stephen L. Tripp, either individually or through entities he controlled, had owned or managed the building for the first five or six years after its construction and for two years immediately preceding its sale to Cardiomed. The Earnest Money Sales Agreement included the following provisions:

B. Inspection. Unless otherwise indicated, Buyer agrees that Buyer is purchasing said property upon Buyer's own examination and judgment and not by reason of any representation made to Buyer by Seller or the Listing or Selling Brokerage as to its condition, size, location, present value, future value, income herefrom or as to its production. Buyer accepts the property in "as is" condition subject to Seller's warranties as outlined in Section 6. In the event Buyer desires any additional inspection, said inspection shall be allowed by Seller but arranged for and payed by Buyer.

. . . .

L. Complete Agreement—No Oral Agreements. This instrument constitutes the entire agreement between the parties and supercedes and cancels any and all prior negotiations, representations, warranties, understandings or agreements between the parties. There are no oral agreements which modify or affect this agreement. This Agreement cannot be changed except by mutual written agreement of the parties.

¶ 5 When Hannes Robinson, the manager of Cardiomed, first inspected the building while being accompanied by Tripp, he observed a sloping of the concrete floor, cracks in the plaster, gaps between the walls and the ceiling, and some ill-fitting doors. Robinson asked Tripp about these noticeable defects, and Tripp represented that the building was strong and free of any structural problems. Tripp also indicated that he was

---

1. Cardiomed filed a motion to strike portions of appellees' brief, which referred to deposition testimony not made part of the record on appeal. We grant the motion insofar as the information objected to was not before the trial court. *See* *Russell v. Thomson Newspapers, Inc.*, 842 P.2d 896, 899 n. 3 (Utah 1992) (stating appellate court will "consider deposition material that was actually before the trial court").

involved in the engineering and construction of the building, and that it was over-engineered and over-built. Tripp further told Robinson that the building would withstand earthquakes that many other buildings would not. After making these representations, Tripp provided Robinson with an inspection report he had previously obtained, and which did not identify any problems with the support system.[2]

¶ 6 Tripco disputes the facts as stated. Tripco alleges that Tripp represented to Robinson only that Tripp had been told that the building was a strong structure; that "he merely passed along what he had been told by those who worked in this particular construction system." Tripco also denies that Tripp produced an inspection report, arguing instead that it was Robinson who obtained the inspection report.

¶ 7 In any event, Cardiomed subsequently purchased the building for $375,000. After the city forced Cardiomed to either repair the building's support structure—at a cost of approximately $165,000—or face condemnation, Cardiomed brought suit against Tripco alleging breach of warranty and fraud.

¶ 8 Tripco filed a motion for summary judgment, arguing that the merger doctrine and lack of evidence respectively defeated those causes of action. In its memorandum in opposition to summary judgment, Cardiomed argued that Tripp negligently misrepresented the condition of the building. In reply, Tripco argued that Cardiomed failed to allege negligent misrepresentation in its original complaint, and thus, should be barred from asserting it. Cardiomed thereupon filed a motion to amend its complaint to allege negligent misrepresentation. The trial court granted Tripco's motion for summary judgment as to breach of warranty and fraud, but also granted Cardiomed's motion to amend its complaint to allege negligent misrepresentation. Cardiomed then filed an amended complaint alleging negligent misrepresentation. Tripco again moved for summary judgment, arguing the merger doctrine precluded this claim too, and the trial

court granted the motion. This appeal followed.

## STANDARD OF REVIEW

■ ¶ 9 A party is entitled to summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). " 'On an appeal from a grant of summary judgment, we review the trial court's legal conclusions for correctness and grant them no deference.' " *Holmes v. American States Ins. Co.*, 2000 UT App 85, ¶ 9, 391 Utah Adv. Rep. 16, 1 P.3d 552 (citation omitted).

## ANALYSIS

### 1. Negligent Misrepresentation

■ ¶ 10 Cardiomed argues that the trial court erred in granting summary judgment on its negligent misrepresentation claim because "negligent misrepresentation is a species of fraud and is therefore excepted from the merger doctrine." We disagree.

■ ¶ 11 "It is well settled that the merger doctrine applies in Utah." *Maynard v. Wharton*, 912 P.2d 446, 449 (Utah Ct.App. 1996).

> "The doctrine of merger ... is applicable when the acts to be performed by the seller in a contract relate only to the delivery of title to the buyer. Execution and delivery of a deed by the seller then usually constitute full performance on his [or her] part, and acceptance of the deed by the buyer manifests his [or her] acceptance of that performance even though the estate conveyed may differ from that promised in the antecedent agreement. Therefore, in such a case, the deed is the final agreement and all prior terms, whether written or verbal, are extinguished and unenforceable."

*Id.* at 449–50 (omission and alterations in original) (quoting *Stubbs v. Hemmert*, 567 P.2d 168, 169 (Utah 1977)). However, the doctrine "has four discrete exceptions: (1)

---

**2.** The record does not contain the report nor indicate when the inspection was actually performed.

mutual mistake in the drafting of the final documents; (2) ambiguity in the final documents; (3) existence of rights collateral to the contract of sale; and (4) fraud in the transaction." *Id.* at 450. Because Cardiomed urges this court to determine that negligent misrepresentation falls under the "fraud in the transaction" exception, our analysis will focus specifically on that exception.

¶ 12 The fraud exception "applies when the party seeking to avoid merger can prove by clear and convincing evidence that the other party committed fraud in the real estate transaction." *Id.* In order to prevail under the fraud exception, "all the elements of fraud must be established." *Secor v. Knight,* 716 P.2d 790, 794 (Utah 1986). The elements of fraud in Utah are:

> "(1) a representation; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either *(a) knew to be false, or (b) made recklessly,* knowing that he [or she] had insufficient knowledge on which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his [or her] injury and damage."

*Maynard,* 912 P.2d at 450 (emphasis added) (alterations in original) (quoting *Dugan v. Jones,* 615 P.2d 1239, 1246 (Utah 1980)). Thus, for Cardiomed to prevail under the fraud exception to the merger doctrine, it must necessarily provide clear and convincing evidence that any misrepresentations Tripp made about the building were made *knowingly or recklessly.*

¶ 13 The tort of negligent misrepresentation, which Cardiomed argues falls

within the fraud exception, carries a lesser mental state, requiring only that the seller act *carelessly or negligently.* See *Price–Orem Inv. v. Rollins, Brown & Gunnell,* 713 P.2d 55, 59 & n. 2 (Utah 1986) (stating that "by its very terms, *negligent* misrepresentation does not require the intentional mental state necessary to establish fraud"). Although fraud and negligent misrepresentation are related, they embody two different states of mind. Thus, "all of the elements of fraud [cannot] be established" through proof of negligent misrepresentation. *Secor,* 716 P.2d at 794. Therefore, in Utah, negligent misrepresentation does not fall within the discrete fraud exception to the merger doctrine.[3]

¶ 14 Although the merger doctrine has been described as " 'an admittedly harsh rule of law,' " *Maynard,* 912 P.2d at 451 (citation omitted), it applies in Utah because it " 'preserves the integrity of the final document of conveyance and *encourages the diligence of the parties.*' " *Id.* Accordingly, the trial court properly entered the summary judgment precluding Cardiomed from asserting a negligent misrepresentation cause of action.

## 2. Fraud

¶ 15 Cardiomed next contends that the trial court erred in granting summary judgment on its fraud claim, arguing that genuine issues of material fact preclude judgment as a matter of law. In support of its motion for summary judgment, Tripco argued that Cardiomed lacked sufficient evidence to support three of the necessary elements of fraud. Tripco argued: (1) there was no evidence showing that Tripp's statements were false; (2) there was no evidence that Tripp knew his statements were false, or that he

---

**3.** Our dissenting colleague points to other jurisdictions in support of her position that negligent misrepresentation should be an exception to the merger doctrine. However, pursuant to the principles of stare decisis, we are bound to follow Utah law on this point. See *State v. Menzies,* 889 P.2d 393, 399 n. 3 (Utah 1994). *Maynard* states that there are only four exceptions to the merger doctrine, and that one of those is fraud. See 912 P.2d at 450. *Secor,* 716 P.2d at 794, and *Dugan,* 615 P.2d at 1246, hold that one of the elements of fraud is that the misrepresentation

must be made knowingly or recklessly (as opposed to carelessly or negligently). Although we agree with the dissent that negligent misrepresentation is related to fraud, see *Atkinson v. IHC Hosps., Inc.,* 798 P.2d 733, 737 (Utah 1990), the mental state required to establish Utah's fraud exception to the merger doctrine is higher than that required to establish negligent misrepresentation. See *Secor,* 716 P.2d at 794; *Dugan,* 615 P.2d at 1246; see also *Price–Orem,* 713 P.2d at 59 n. 2 (distinguishing mental state required for fraud and negligent misrepresentation).

made them recklessly, knowing that he had insufficient knowledge on which to base his representations; and (3) Cardiomed did not reasonably rely on Tripp's representations. Although the trial court did not provide any explanation for its ruling, it apparently based the summary judgment on one or more of the three elements argued by Tripco. Accordingly, we will analyze those elements.

### A. False Statements

¶ 16 Cardiomed argues there was evidence to support Cardiomed's claim that Tripp's statements were false. "[A]ccept[ing] the facts and inferences in the light most favorable to [Cardiomed]," we agree. *Winegar v. Froerer Corp.*, 813 P.2d 104, 107 (Utah 1991).

¶ 17 Tripp represented that the building was free of structural defects, that it was over-engineered and over-built, and that it would withstand earthquakes that other buildings would not. However, after Tripco sold the building to Cardiomed, the building was found to have structural problems, even to the point that the city threatened to condemn it if renovations were not made. Moreover, Reinhardt Bsumek, Cardiomed's expert, inspected the building in 1994 and indicated that the building's construction was negligently performed, and that the building was not safe. Tripco asserts that although the building's structure may have been defective after the sale, Cardiomed cannot demonstrate that the building's structural problems existed at the time of sale to Cardiomed. Although it is true that Bsumek inspected the building after it was sold and he could not determine the exact point in time the structure became unsafe, given the problems Robinson witnessed when he walked through the building prior to the purchase, one could reasonably infer that the building had the structural defects at the time of sale. Thus, a genuine issue of material fact exists as to whether Tripp made false representations regarding the structural integrity of the building.

### B. Made Knowingly or Recklessly

¶ 18 Cardiomed next argues there was evidence to support its claim that Tripp had knowledge that his statements were false, or that they were made recklessly, knowing that he had insufficient knowledge on which to base his statements. We again agree. Tripp previously had never used this particular support structure in any building he contracted, nor has he subsequently used this support structure in any other building. In addition, the building's plans and specifications called for a different structural support system than the one used. Further, as Tripco admitted in its memorandum in support of summary judgment, "all the actual work, including design and engineering was performed by subcontractors." In reality, Tripp knew very little about the particular support structure used in the building. Therefore, we determine that a genuine issue of material fact exists as to whether Tripp acted knowingly or recklessly in representing to Robinson that the building was strong and free of structural problems, that it was over-engineered and over-built, and that it would withstand earthquakes that many other buildings would not.

### C. Reasonable Reliance

¶ 19 Finally, Cardiomed argues that because "Tripp held himself out as an expert on the building and its construction, . . . it was reasonable for Cardiomed to rely upon his representations." One of the elements of fraud that a plaintiff must prove is that he or she, "acting reasonably and in ignorance of the statement's falsity, did in fact rely upon the misrepresentation." *Conder v. A.L. Williams & Assocs.*, 739 P.2d 634, 638 (Utah Ct.App.1987). Thus, "not only must there be reliance, but the reliance must be justifiable under the circumstances." *Id.* While the question of whether a plaintiff was reasonable in his or her reliance is "usually a matter within the province of the jury, there are instances where courts may conclude that as a matter of law, there was no reasonable reliance." *Gold Standard, Inc. v. Getty Oil Co.*, 915 P.2d 1060, 1067 (Utah 1996) (citation omitted).

¶ 20 To determine whether the reliance was reasonable, the reliance "must be considered with reference to the facts of

each case." *Conder,* 739 P.2d at 638. In general,

> a plaintiff may justifiably rely on positive assertions of fact without independent investigation. It is only where, under the circumstances, the facts should make it apparent to one of his knowledge and intelligence, or he has discovered something which should serve as a warning that he is being deceived, that a plaintiff is required to make his own investigation.

*Id.* (citations omitted). In addition, " '[f]raud as related to purchase of real estate may not be predicated on alleged false statements the truth of which could have been ascertained with reasonable diligence by the party asserting their falsity.' " *Maack v. Resource Design & Const., Inc.,* 875 P.2d 570, 577 (Utah Ct.App.1994) (citation omitted).

¶ 21 Applying the foregoing legal principles to the facts of this case, we cannot say as a matter of law that Cardiomed was unreasonable in its reliance on Tripp's statements regarding the structural integrity of the building. Viewing the facts in the light most favorable to Cardiomed, they demonstrate that Robinson walked through the building with Tripp before Cardiomed purchased it. Robinson questioned Tripp regarding some problems he observed and Tripp responded that he had been involved in the construction and engineering of the building, and that the building had no structural defects. To support that claim, Tripp then provided Robinson with an inspection report that failed to note any structural problems with the building. Simply stated, because Tripp held himself out as someone with superior knowledge of the building and then lent support to his representations by providing an inspection report, a genuine issue of material fact exists as to whether Cardiomed's reliance was reasonable.

¶ 22 Accordingly, because there were genuine issues of material fact regarding the three elements of fraud relied upon, summary judgment on that cause of action was improperly granted.

## CONCLUSION

¶ 23 The trial court properly granted summary judgment on Cardiomed's negligent misrepresentation claim because it does not fall within the fraud exception to the merger doctrine. The trial court, however, erred in granting summary judgment on Cardiomed's fraud claim because genuine issues of material fact exist.[4]

¶ 24 Affirmed in part, reversed in part and remanded for further proceedings.

¶ 25 I CONCUR: NORMAN H. JACKSON, Associate Presiding Judge.

BILLINGS, Judge (concurring and dissenting):

¶ 26 I concur with the majority except to the extent that it holds that the merger doctrine precludes an action for negligent misrepresentation in this case. Because I conclude that the merger doctrine does not bar plaintiff's negligent misrepresentation claim, I respectfully dissent from that portion of the majority opinion. I would remand for a trial on the issue of negligent misrepresentation.

¶ 27 Under the merger doctrine, a deed is the final, integrated agreement of the parties and abrogates all prior agreements, whether written or oral. *See, e.g., Maynard v. Wharton,* 912 P.2d 446, 449–450 (Utah Ct.App. 1996). Accordingly, a plaintiff generally may not bring a contract claim based on a representation not memorialized in the deed. *See, e.g., id.* The merger doctrine, however, is not immutable, but rather is subject to exceptions. Utah courts have previously recognized four exceptions: mutual mistake in the drafting of the final documents, ambiguity in the final documents, existence of rights collateral to the contract of sale, and fraud in the transaction. *See, e.g, id.* at 450 (citing

---

4. We have considered the other issues raised by the parties and conclude that they are without merit. Accordingly, we decline to address them. *See State v. Carter,* 776 P.2d 886, 888 (Utah 1989) (holding that appellate court "need not analyze and address in writing each and every argument, issue, or claim raised and properly before us on appeal"); *cf. Reese v. Reese,* 1999 UT 75, ¶ 8, 984 P.2d 987 (holding that for purposes of certiorari review, court of appeals must "identif[y] the basis for refusing to treat an issue").

*Secor v. Knight,* 716 P.2d 790, 793 (Utah 1986) and *Embassy Group, Inc. v. Hatch,* 865 P.2d 1366, 1371–72 (Utah Ct.App.1993)).

¶ 28 Whether negligent misrepresentation is also an exception to the merger doctrine is an issue of first impression in Utah. *See Maack v. Resource Design & Constr., Inc.,* 875 P.2d 570, 575 (Utah Ct.App.1994) (reserving question for lack of briefing in that case but assuming negligent misrepresentation was exception to merger doctrine for purposes of analysis).[1]

¶ 29 Utah recognizes the tort of negligent misrepresentation. *See Dugan v. Jones,* 615 P.2d 1239, 1249 (Utah 1980); *Jardine v. Brunswick,* 18 Utah 2d 378, 423 P.2d 659, 661–62 (1967). Negligent misrepresentation arises

> "[w]here one having a pecuniary interest in a transaction, is in a superior position to know material facts, and carelessly or negligently makes a false representation concerning them, expecting the other party to rely and act thereon, and the other party reasonably does so and suffers loss in that transaction."

*Dugan,* 615 P.2d at 1249 (quoting *Jardine,* 423 P.2d at 662).

¶ 30 Defendants argue—and the majority concludes—that merger precludes an action for negligent misrepresentation because fraud requires knowing or reckless disregard for the truth whereas negligent misrepresentation requires only negligent disregard of the truth. However, our supreme court has stated:

under the doctrine of constructive fraud there is a well-established exception that a representation must be made knowingly, willfully, and with intent to deceive. Thus, in a case where the circumstances impose upon the vendor a special duty to know the truth of his representations or where the nature of the situation is such [that] the vendor is presumed to know the facts to which his representation relates, a misrepresentation is fraudulent even though not made knowingly, willfully or with actual intent to deceive.

*Id.* at 1246 (footnote omitted). Thus, a knowing or reckless state of mind is not the *sine qua non* of fraud in Utah.[2] I therefore do not conclude, as the majority does, that negligent misrepresentation is not an exception to the merger doctrine merely because it does not require a knowing or reckless state of mind.

¶ 31 Plaintiff argues that negligent misrepresentation falls within the fraud exception to the merger doctrine because it "grew out of" common law fraud, *Christenson v. Commonwealth Land Title Co.,* 666 P.2d 302, 305 (Utah 1983), and therefore is a "species" of fraud. In fact, our supreme court has gone so far as to say that negligent misrepresentation is a "form" of fraud:

> We have heretofore defined fraud as "a false representation of an existing fact, made knowingly or recklessly for the purpose of inducing reliance thereon upon which the plaintiff reasonably relies to his detriment." Negligent misrepresentation is a form of fraud which occurs when

---

1. I agree with the majority that this court is bound by stare decisis. However, I disagree that either this court or the Utah Supreme Court has held that the merger doctrine precludes a claim for precontractual negligent misrepresentation. As the majority notes in its footnote three, the *Maynard* court recites the four separate exceptions to the merger doctrine recognized at the time. *See* 912 P.2d at 450. However, neither *Maynard* nor any other opinion of this court or the Utah Supreme Court forecloses the possibility of recognizing negligent misrepresentation as an exception to the merger doctrine. Furthermore, as I explain in my dissent, I conclude that, as a form of fraud, negligent misrepresentation is included within the exceptions to the merger doctrine in Utah.

2. Similarly, our supreme court's statement that "to prevail on a claim of fraud, all the elements of fraud must be established by clear and convincing evidence," *see* majority opinion, *supra,* at 223 (quoting *Secor v. Knight,* 716 P.2d 790, 794 (Utah 1986)), cannot be read to hold that the merger doctrine precludes the present claim. Read in context, that statement is merely a segue to the court's actual holding, which affirms the trial court's conclusion that the plaintiffs did not rely on the real estate agent's representations and that any reliance would have been unreasonable, thus plaintiff failed to establish two elements of fraud.

[o]ne who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by the justifiable reliance on the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Atkinson v. IHC Hosps., Inc.*, 798 P.2d 733, 737 (Utah 1990) (quoting *Sugarhouse Fin. Co. v. Anderson*, 610 P.2d 1369, 1373 (Utah 1980) and Restatement (Second) of Torts § 552 (1977)); *see also Ellis v. Hale*, 13 Utah 2d 279, 373 P.2d 382, 384–85 (1962) ("The usual action for fraud, whether negligent or intentional, requires that a representation be made with the intention that it be relied on." (footnote omitted)). Thus, I conclude that negligent misrepresentation as a form of fraud is an exception to the merger doctrine.

¶ 32 Furthermore, my research leads me to conclude that negligent misrepresentation should be an exception to the merger doctrine whether or not it is characterized as a form or species of fraud.

¶ 33 I have found no appellate decisions addressing the precise issue of whether the merger doctrine precludes a claim for pre-contractual negligent misrepresentation.[3] A number of appellate courts, however, have addressed the closely related contract law issue of whether the parol evidence rule or the doctrine of caveat emptor preclude such a claim in cases concerning both sale of goods and real property. Those cases addressing negligent misrepresentation claims in the context of a real estate transaction ignore the threshold merger doctrine issue and proceed to an analysis of the antecedent sales contract or earnest money agreement. *See, e.g., Formento v. Encanto Bus. Park*, 154 Ariz. 495, 744 P.2d 22 (Ariz.Ct.App.1987) (sale of business property); *Wagner v. Cutler*, 232 Mont. 332, 757 P.2d 779 (1988) (sale of residence); *Hoover v. Hegewald*, 70 Or. App. 223, 689 P.2d 965 (1984) (sale of ranch property); *Grube v. Daun*, 173 Wis.2d 30, 496 N.W.2d 106 (1992) (sale of agricultural property). Indeed, in this case, in their Memorandum in Support of Defendants' Motion for Summary Judgment, Defendants characterize the issue as one of merger but argue that they are entitled to judgment on the basis of the "as is" and integration clauses in the Earnest Money Agreement executed by the parties.

¶ 34 A majority of courts that have considered a claim for pre-contractual negligent misrepresentation have concluded that the claim is not barred by contract law defenses. These cases present two persuasive arguments in favor of permitting such a cause of action to proceed.

¶ 35 First, several cases note that the cause of action sounds in tort and therefore cannot be barred by substantive rules of contract law such as the merger doctrine or the parol evidence rule. *See, e.g., Formento*, 744 P.2d at 25–26; *Keller v. A.O. Smith Harvestore Prod. Inc.*, 819 P.2d 69, 73 (Colo. 1991); *Johnson v. Healy*, 176 Conn. 97, 405 A.2d 54, 56–57 (1978); *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 439 A.2d 534, 539 (1982); *Zimmerman v. Kent*, 31 Mass.App. Ct. 72, 575 N.E.2d 70, 74 (1991); *Wagner*, 757 P.2d at 781–82; *Gilliland v. Elmwood Properties*, 301 S.C. 295, 391 S.E.2d 577, 580–81 (1990); *Grube v. Daun*, 173 Wis.2d 30, 496 N.W.2d 106, 116–17 (1992).[4]

---

3. In their Memorandum in Support of Defendants' Motion for Summary Judgment, Defendants argue that one appellate court opinion has concluded that claims for negligent and innocent misrepresentation do not survive the merger doctrine in a real estate transaction. *See Sullivan v. Reliable Realty*, 16 Va. Cir. 118 (1989). On the contrary, that *trial* court opinion concluded merger did not preclude those claims, reasoning that "[w]hether the representation is made innocently or knowingly, if acted on, the effect is the same." *Id.* at 121 (citation omitted).

4. Even courts that have denied the cause of action do not foreclose the possibility of a negligent misrepresentation claim between contracting parties, but rather base their holdings on the language of the underlying contract. *See, e.g., Rio Grande Jewelers Supply, Inc. v. Data Gen. Corp.*, 101 N.M. 798, 689 P.2d 1269, 1270–71 (1984) (noting, inter alia, that parties' contract contained integration clause); *Hoover*, 689 P.2d at 969 ("[I]n this case the contract contained a clause specifically excluding any prior warranties and declaring that there had not been any representations made which induced defendants to

¶ 36 Second, the harm to the party induced to contract in reliance on false information is the same whether that information was supplied knowingly, recklessly, or negligently. *See, e.g., Formento,* 744 P.2d at 26. That is, misrepresentation, whether knowing, reckless, or negligent, threatens the integrity of the bargaining process because the party induced might not have consented to contract with the party supplying the false information but for that information.

¶ 37 The Maryland Court of Appeals recognized this in *Martens Chevrolet, Inc. v. Seney,* 292 Md. 328, 439 A.2d 534 (1982). In that case, the seller of an auto dealership misrepresented the dealership's profitability to the eventual purchaser of the dealership. When the dealership turned out to be less profitable than represented, the buyer sued. *See id.* at 536–37. The court held that an integration clause in the contract for sale stating that the contract "supercedes all prior and contemporaneous agreements and undertakings, inducements or conditions, express or implied, oral or written" did not shield the seller from a claim for negligent misrepresentation. *Id.* at 539 n. 7.

> A party to a contract cannot, by misrepresentation of a material fact, induce the other party to the contract to enter into it to his damage, and then protect himself from the legal effect of such misrepresentation by inserting in the contract a clause to the effect that he is not to be held liable for the misrepresentation which induced the other party to enter into the contract. The effect of misrepresentation and fraud cannot be thus easily avoided. If it could be, the implied covenant of good faith and fair dealing existing in every contract would cease to exist.

*Id.* (citations omitted).

¶ 38 Similarly, *Formento* involved a misrepresentation about zoning restrictions in a business real estate transaction. *See* 744 P.2d at 23. Holding that the parol evidence rule did not bar a claim for negligent pre-contractual misrepresentation, the court rec-

ognized the importance of the finality of transactions to contract law, but noted:

> "There is also a judicial policy promoting honesty and fair dealing in business relationships. This policy is expressed in the law of fraudulent and negligent misrepresentations. Where a misrepresentation is fraudulent or where a negligent misrepresentation is one of material fact, the policy of finality rightly gives way to the policy of promoting honest dealings between the parties...." ... [A] seller should not be allowed to hide behind an integration clause to avoid the consequences of a misrepresentation, whether fraudulent or negligent.

*Id.* at 26 (citation omitted).

¶ 39 The few courts that deny recovery argue that allowing a tort cause of action for pre-contractual negligent misrepresentation interferes with the principle of freedom of contract. I agree that bargained-for duties and liabilities not contrary to public policy should remain beyond judicial intervention. Moreover, it is well established that parties may bargain for immunity from negligence. *See, e.g., DCR Inc. v. Peak Alarm Co.,* 663 P.2d 433, 438 (Utah 1983). However, I would not conclude as a matter of law that parties have bargained away judicial intervention unless the real estate or other contract clearly and unequivocally expresses an intent to preclude liability for negligent misrepresentation.

¶ 40 The Wisconsin Court of Appeals adopted this approach in *Grube v. Daun,* 173 Wis.2d 30, 496 N.W.2d 106 (1992). In that case, the plaintiffs purchased farm land that contained underground storage tanks that had leaked fuel and contaminated the property's water wells. *See id.* at 111. The plaintiffs brought suit alleging fraud, negligent misrepresentation, and nondisclosure. *See id.* The defendants filed for summary judgment arguing that the suit was barred by a clause in the offer to purchase contract stating, "Buyer is buying the property in a[sic] as is condition without any warranties." *Id.* The court reversed summary judgment for

---

purchase the property."); *Snyder v. Lovercheck,* 992 P.2d 1079, 1087 (Wyo.1999) (stating issue "is whether a plaintiff may bring an action which arises out of a contract and call it a tort action, thereby rendering his own statement in the contract null and void").

the defendants, holding that the "as is" clause barred a suit for breach of warranty but not for negligent misrepresentation. *See id.* at 117. The court stated:

[A]s a matter of public policy, tort disclaimers in contracts will not be honored unless the disclaimer is specific as to the tort it wishes to disclaim. In order to be effective, the disclaimer must make it apparent that an express bargain was struck to forgo the possibility of tort recovery in exchange for negotiated alternate economic damages.

Even if the scope of the "as is" clause extended outside of the warranty context, the clause in the ... contract does not specify, or even refer to, negligence or misrepresentation as required by [Wisconsin case law]. It also does not show that the clause was reached through bargaining between the parties, for example, through lower contract costs or express concessions regarding other terms.

[This case law rests] on the careful balancing of the principles of contract and tort law. The law of contracts is based on the principle of freedom of contract. The law protects justifiable expectations and the security of transactions. These principles generally support the enforcement of an exculpatory clause. The law of torts is based on the principle of compensation of individuals for injuries sustained as the result of the unreasonable conduct of another. Tort law also serves the purpose of preventing future harm. These tort law principles make a court reluctant to allow the parties to shift by contract the burden of negligent conduct from the actor to the victim.

*Id.*

¶ 41 The Colorado Supreme Court reached the same result in *Keller v. A.O. Smith Harvestore Prod., Inc.,* 819 P.2d 69 (Colo. 1991). There the plaintiffs purchased a grain silo that caused their silage to spoil. *See id.* at 70–71. The sales contract included an integration clause and an additional clause providing, in capital letters,

I [buyer] have read and understood the terms and conditions of this purchase order including the warranties, disclaimers, and terms and conditions herein given to me, either by the manufacturer or the seller. I rely on no other promises or conditions and regard that as reasonable because these are fully acceptable to me. *Id.* at 71. The court held that the contract did not preclude a claim for negligent misrepresentation:

Many other courts have also concluded that the mere presence of a general integration clause in an agreement does not bar a claim for negligent or fraudulent misrepresentation. We conclude that a general integration clause does not effect a waiver of a claim of negligent misrepresentation not specifically prohibited by the terms of the agreement. The general language of the integration provisions of the purchase agreements here at issue does not specifically preclude negligent misrepresentation claims....

A contract provision purporting to prohibit a party to the contract from asserting a claim of negligent misrepresentation must be couched in clear and specific language.

*Id.* at 73–74 (citations omitted); *see also* Elizabeth Cumming, Note, *Balancing the Buyer's Right to Recover for Precontractual Misstatements and the Seller's Ability to Disclaim Express Warranties,* 76 Minn. L.Rev. 1189 (1992) (proposing Uniform Commercial Code revision adopting this approach); Jared M. Levin, Note, *A Proposed Penalty Default Rule Governing a Seller's Ability to Disclaim Liability for Precontractual Misrepresentations,* 1997 Colum. Bus. L.Rev. 399 (proposing that federal courts adopt this approach under existing U.C.C.).

¶ 42 Utah likewise recognizes that parties may contract to avoid prospective liability for negligent torts. *See, e.g., DCR,* 663 P.2d at 438. Allowing parties to contract around prospective liability for negligent torts—but not reckless or intentional torts—comports with the important policy of allowing contracting parties freedom to apportion duties and liabilities while prohibiting contracts contrary to public policy. I see no reason to distinguish between prospective and retroactive liability when it comes to apportioning duties and liabilities through contract. Although placing the liability for fraudulent

bargaining behavior on the victim is plainly contrary to public policy, parties should be free to apportion liability for negligent bargaining behavior through the terms of their contract.

¶ 43 However, as in the case of a contract limiting prospective liability for negligence, this court should not limit a party's liability in tort for prior negligent misrepresentations unless the contract "clearly and unequivocally" expresses an intent to do so. *See id.* at 437 (holding liquidated damages clause in contract did not express intent to limit damages in tort for economic damages resulting from vendor's failure to warn customer of burglar alarm's deficiencies). "Without such an expression of intent, ' "the presumption is against any such intention, and it is not achieved by inference or implication from general language." ' " *Interwest Const., v. Palmer,* 923 P.2d 1350, 1356 (Utah 1996) (quoting *DCR,* 663 P.2d at 437 (quoting *Union Pac. R.R. v. El Paso Natural Gas Co.,* 17 Utah 2d 255, 408 P.2d 910, 914 (1965))). Only a clear and unequivocal expression ensures both that the contracting parties have notice of the rights waived and that the courts enforce the parties' intent to relieve a party of its duty.

¶ 44 The Earnest Money Sales Agreement (Agreement) in the present case contains no expression, much less a clear and unequivocal expression, of an intent to limit Defendants' liability in tort. The Agreement includes an inspection clause and an integration clause. The inspection clause provides:

> INSPECTION. Unless otherwise indicated, Buyer agrees that Buyer is purchasing said property upon Buyer's own examination and judgment and not by reason of any representation made to Buyer by Seller or the Listing or Selling Brokerage as to its condition, size, location, present value, future value, income herefrom or as to its production. Buyer accepts the property in "as is" condition subject to Seller's warranties as outlined in Section 6. In the event Buyer desires any additional inspec-

tion, said inspection shall be allowed by Seller but arranged for and paid by Buyer.

The integration clause provides:

> COMPLETE AGREEMENT—NO ORAL AGREEMENTS. This instrument constitutes the entire agreement between the parties and supersedes and cancels any and all prior negotiations, representations, warranties, understandings or agreements between the parties. There are no oral agreements which modify or affect this agreement. This agreement cannot be changed except by mutual written agreement of he parties.

The Agreement makes no mention of negligence or tort liability of any kind. Although the inspection clause refers to seller's representations, it fails to refer to negligent representations, and, on its face, purports only to limit liability for warranties not included in Section 6 of the Agreement. Thus, the inspection clause expressly limits contract liability, but expresses no intent to limit Defendants' tort liability, and such intent is not to be inferred or implied. The integration clause likewise expresses no intent to limit tort liability.

¶ 45 Because I conclude that the merger doctrine does not bar Plaintiff's claim and that, rather, the terms of the parties' contract should dictate whether a claim for negligent misrepresentation is precluded, and because the contract in this case does not clearly and unequivocally preclude an action for negligent misrepresentation, I dissent from the portion of the majority opinion on that issue. I would remand the issue to allow the plaintiff an opportunity to prove his negligent misrepresentation claim.