McHUGH, Judge
(concurring in part and dissenting in part):
{22 I concur with part I of the majority's decision, but I respectfully dissent from part II regarding whether a party may challenge the sufficiency of the complaint to support a default judgment for the first time on appeal. Accordingly, I would consider whether Fu's Complaint states a claim upon which relief can be granted against each of the Defendants. Upon review of the Complaint, I would conclude that it does so as to Rhodes but fails to state a claim against Naso and Evans. As a result, I would affirm the default judgment against Rhodes but reverse as to Naso and Evans.
I. Preservation
123 The Utah appellate courts have not addressed the precise issue before us: whether a party who has appeared and participated in litigation is required to raise a challenge to the sufficiency of the complaint in the trial court to preserve that issue for appeal of a default judgment entered as a result of a discovery sanction striking the answer. - However, our appellate courts have provided some guidance on this issue in the context of a default judgment entered as a result of a failure to appear. Although much of that discussion is dicta, I believe it provides assistance in highlighting the competing rationales on this issue.
1] 24 In the first of these decisions, Katz v. Pierce, 732 P.2d 92 (Utah 1986) (per curiam), the trial court entered default judgment against defendants who failed to file a timely answer. Id. at 98. Subsequently, the court denied the defendants' rule 60(b) motion to set aside the default judgment. Id.; see also Utah R. Civ. P. 60(b) ("On motion and upon such terms as are just, the court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding...."). The defaulted party appealed the trial court's denial of the rule 60(b) motion, seeking "reversal of the judgment because the damages awarded [were] in excess of the amount prayed for in the complaint" but did not separately appeal the default judgment. Id. at 95. The Utah Supreme Court first noted that it had "consistently reversed default judgments when the amount of damages awarded exceeds the amount of the prayer of the complaint or is unsupported by evidence in the record." Id. Nevertheless, it refused to do so in Katz because the "[alppeal was taken only from the denial of the 60(b) motion, which was premised only upon the claim that the parties were [involved in settlement] negotiatifons]." Id. The supreme court held that the defendants could not "assert new grounds for [their] motion [for relief from judgment] for the first time on appeal without having afforded the trial court an opportunity to rule on those grounds or to correct any alleged deficiency." Id. at 95-96. The court further observed that "(elven though the court erroneously gave no hearing on damages, that issue is relevant only in the context of a direct appeal from the judgment itself and not in an appeal from the motion to set aside when not raised below as grounds for the motion." Id. at 95. Because "no direct appeal from the judgment was taken, although *89 appellants might have done so," the supreme court refused to consider the challenge to the amount of damages. Id. The dicta in Katz suggests that, at least with respect to a default entered for failure to appear, a party may challenge the amount of damages for the first time on appeal of the default judgment itself.
125 Ten years later, in State v. Sixteen Thousand Dollars United States Currency, 914 P.2d 1176 (Utah Ct.App.1996), this court considered a related issue. There, the Grand County attorney filed a complaint seeking forfeiture of $16,000 seized during a traffic stop. Id. at 1177. The driver of the vehicle failed to answer, and the trial court entered a default judgment in favor of the State. Id. The driver then filed a motion for relief from judgment under rule 60(b), but before the trial court bad an opportunity to rule, he filed a notice of appeal. Id.; see also Utah R. Civ. P. 60(b). The trial court later denied the 60(b) motion, but the driver did not appeal from that order. See Sixteen Thousand, 914 P.2d at 1177. Instead, he pursued only his direct appeal of the default judgment, arguing "that the trial court erred as a matter of law in finding the $16,000 subject to forfeiture, erred in making inadequate findings of fact, and exceeded the scope of permitted discretion in refusing to grant a continuanee." Id. at 1177-78. This court dismissed the appeal, holding that the driver "could only appeal from the denial of his Rule 60(b) motion, and not from the default judgment directly." Id. at 1178. We reasoned that when default is entered for the failure to defend, the party must "first present alleged errors regarding a default judgment to the trial court, and then follow the appropriate course for appeal." Id. at 1179. The Sixteen Thousand court did not discuss the suggestion in Katz that an unpreserved challenge to the amount of damages can be raised for the first time in a direct appeal from the default judgment. See Katz, 732 P.2d at 95. As the majority correctly notes, we instead distinguished a default judgment entered for failure to defend from a default judgment entered as a discovery sanction, stating that the "sanctioned party [would have] filed responsive pleadings, appeared before the trial court, and had an opportunity to argue against the sanction before the trial court," while the party who fails to appear would not have. Sixteen Thousand, 914 P.2d at 1178. Thus, we suggested that a direct appeal from a default judgment entered as a sanction would be appropriate, but that when default judgment is entered for failure to appear, the proper course is to file a motion under rule 60(b) for relief from judgment, or under rule 59 to alter or amend judgment." Id. We indicated that this approach "is a natural corollary of the general rule that we will not consider issues raised for the first time on appeal.[7] Id. at 1178-79 (noting "the requirement that an appellant first present alleged errors regarding a default judgment to the trial court"). Of importance to the preservation issue here, we further explained that when a default judgment is entered in error as a matter of law, including where the complaint is not legally sufficient to state a valid claim, the "party asserting the error must first present the issue to the trial court through the appropriate postjudgment motion prior to seeking appellate review." Id. at 1178 (citing Katz, 732 P.2d at 95, for the proposition that "a trial court may err as a matter of law in entering a default judgment"). This dicta advocates different rules for default judgments entered as a result of the failure to appear and default judgments entered as a discovery sanction, and seems inconsistent with the dicta in Katz suggesting that an invalid damages award in a default judgment entered for failure to appear can be challenged by a direct appeal of the judgment. See Katz, 732 P.2d at 95.
1 26 More recently, in Skanchy v. Calcados Ortope SA, 952 P.2d 1071 (Utah 1998), the Utah Supreme Court again considered a challenge to a default judgment. There, the distributors of shoes sued the Brazilian manufacturer in Utah for breach of contract, promissory estoppel, and fraud. Id. at 1078. However, the "complaint alleged only facts *90 related to the written contract between the parties and to [the manufacturer's] breach of the exclusive territory provision in that contract." Id. at 1076. After the manufacturer failed to answer, the trial court entered its default and subsequently entered default judgment. Id. at 1074. The manufacturer eventually moved to set aside the judgment under rule 60(b) of the Utah Rules of Civil Procedure. Id. The trial court denied the motion with respect to liability but granted it as to damages. Id. The distributors then elected to pursue damages only under their promissory estoppel claim. Id. After a bench trial limited to the amount of damages due under that theory, the trial court entered default judgment against the manufacturer for the amount of damages proved at trial. Id. The manufacturer appealed from the default judgment, claiming that the service of the complaint was defective and that the trial court erred in awarding damages for promissory estoppel because that theory was not supported by the allegations of the complaint. Id. In considering the second issue, the supreme court explained that "the entry of a default does not automatically entitle a plaintiff to a default judgment for the damages claimed in the complaint." Id. at 1076. While "all that must be shown for the entry of a default is that the defendant has failed to answer the complaint in a timely fashion," the court instructed that "a default judgment is valid only if the well-pled facts show that the plaintiff is entitled to judgment as a matter of law." Id. Accordingly, the Utah Supreme Court instructed that "[oln appeal from a default judgment, a defendant may contest 'the sufficiency of the complaint and its allegations to support the judgment."" Id. (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). Because the complaint alleged only the promises made in the written contract, the Skanchy court held that it was "error for the trial court to have awarded a judgment for damages based on a promissory estoppel theory that was not properly pled in the complaint, notwithstanding [the manufacturer's] default." Id. at 1078. Thus, the Utah Supreme Court. reversed the judgment for damages and "remanded to the trial court for further consideration, including whether plaintiffs' election to pursue reliance damages is binding and whether [the plaintiffs] may amend their complaint without voiding the default, if those issues are raised." Id.
{27 The Skanchy decision is unclear as to whether the manufacturer challenged the sufficiency of the complaint in the trial court. However, the copy of the trial court's order denying the rule 60(b) motion attached to the manufacturer's appellate brief suggests that it did not.[8] Nevertheless, the supreme court considered whether the complaint stated a claim for promissory estoppel. Thus, while the court did not expressly address the issue, I believe its decision supports the proposition that a party appealing from a default judgment entered as a result of the failure to appear can challenge the sufficiency of the complaint to support the judgment for the first time on appeal.
{28 In my view, the Skanchy court's reliance on the Fifth Cireuit Court of Appeals' decision in Niskhimatsu Construction Co. v. Houston National Bank, 515 F.2d 1200 (5th Cir.1975), is also instructive on this point. In Nishimatsu, the corporate and individual defendants named by a bank in a third-party complaint failed to answer and default was entered against them. Id. at 1204. Before the bank's motion for entry of default judgment could be heard, however, the defendants filed an answer. Id. Thereafter, the defendants failed to appear for depositions, did not respond to written discovery, and refused to communicate with counsel. Id. After several continuances of the trial date, the trial court granted the bank's renewed motion for the entry of default judgment based on the defendant's discovery abuses. Id. In response, an individual defendant filed a notice of appeal from the default judgment without first seeking relief under rule 60(b). Id. One of the grounds asserted on appeal was that the allegations in the complaint did not support the judgment. Id. at 1205-06. The Fifth Circuit held that despite the indi *91 vidual having "wilfully disregarded the rules of the judicial process and ignored the trial setting of the court below, and ... suffer[ed] a judgment by default as a result of his deliberate and contumacious conduct," he could "attempt to defend the case on the merits for the first time in the Court of Appeals." Id. at 1202-08 (internal quotation marks omitted). Based on this language, I read Nishimatsu as supporting the right to challenge the sufficiency of a complaint for the first time on appeal from a default judgment. Accord Eagle Fund, Ltd. v. Sarkans, 63 Mass.App.Ct. 79, 823 N.E.2d 783, 786 n. 8 (2005) (relying on Nishimatsu in reviewing the sufficiency of a complaint to support a default judgment entered pursuant to a discovery sanction for the first time on appeal); see also Cabral v. Diversified Servs., Inc., 560 So.2d 246, 247 (Fla.Dist.Ct.App.1990) (per curiam) (citing Nishimatsu as support for the statement that despite the usual rule that only issues raised in the trial court may be reviewed on appeal, a defendant may challenge the sufficiency of the complaint for the first time on appeal from a default judgment). Interestingly, the Utah Supreme Court in Skanchy also adopted the Nishi-matsu court's remedy of vacating the affected portion of the judgment with instructions that the trial court permit the plaintiff bank to amend its complaint on remand. Compare Skanchy, 952 P.2d at 1078, with Nishimatsu, 515 F.2d at 1208.
129 This position is also consistent with that of the majority of jurisdictions that have considered the issue. Seq, eg., Danning v. Lavine, 572 F.2d 1386, 1888-89 (9th Cir.1978) (reviewing appellant's claim, raised for the first time on appeal, that the complaint is insufficient to support the default judgment entered for failure to appear); Kubick v. Federal Deposit Ins. Corp. (In re Kubick), 171 BR. 658, 660 (9th Cir. BAP 1994) ("Although entry of a default judgment [for failure to appear] is usually attacked collaterally under Rule 60(b), on direct appeal a defendant can contest the legal sufficiency of allegations contained in the complaint." (footnote omitted)); Thorp Loan & Thrift Co. v. Morse, 451 N.W.2d 361, 362-63 (Minn.Ct. App.1990) (holding that "a defendant in default [for failure to appear] may argue for the first time on appeal that the plaintiffs complaint did not state a cause of action or that the relief granted was not justified by the complaint"); Caruso v. Krieger, 698 S.W.2d 760, 762 (Tex.App.1985) (evaluating the sufficiency of the pleadings for the first time on appeal because "[al default judgment [entered for failure to appear] not supported by the pleadings is fundamentally erroneous"). While this approach is not universal,[9] I believe it is the better approach. Even where a defendant's discovery sanctions have resulted in the entry of default, I would hold that the trial court, may not enter default judgment without first assessing if the complaint states a claim. See Davis v. Goldsworthy, 2010 UT App 78, ¶ 10, 233 P.3d 496 (mem.) ("Thus, 'to enter a default judgment ..., a judge must review the complaint ... [to] determine whether the allegations state a valid claim for relief" " (alteration and omissions in original) (quoting Skanchy, 952 P.2d at 1076)); see also Pennington v. Allstate Ins. Co., 973 P.2d 932, 940 (Utah 1998) (same); American Towers Owners Ass'n v. CCI Mech, Inc., 930 P.2d 1182, 1194 (Utah 1996) (same), abrogated on other grounds by Davencourt at Pilgrims Landing Homeowners Ass'n v. Da-vencourt at Pilgrims Landing, LC, 2009 UT 65, 221 P.3d 234; 10 James Wm. Moore, et al., Moore's Federal Practice § 55.60[1] (3d ed.2013) ("[Olune effect of a default is that the factual allegations of the claim are deemed to be admitted by the defaulting party. Therefore, on appeal from a default *92 judgment, the defaulting party may not contest those facts. The appeal is limited to the legal sufficiency of the admitted facts."); Charles Alan Wright, et al., Federal Practice & Procedure § 2688 (3d ed.1998) ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.").[10]
30 Furthermore, I would permit a challenge to the sufficiency of the complaint to support the default judgment to be raised for the first time on appeal, irrespective of whether default was entered for failure to appear or as a discovery sanction. Seq, e.g., Microsoft Corp. v. Computer Care Cir., Inc., 2008 WL 4179658, at *6 (E.D.N.Y. Sept. 10, 2008) (stating that, "regardless of whether default is entered as a discovery sanction or for failure to defend," the factual allegations of the complaint must constitute a legitimate cause of action). Accordingly, I respectfully dissent from the portion of the majority opinion concluding that we should not evaluate the sufficiency of the Complaint on appeal because Defendants did not raise this issue in the trial court. I would therefore consider whether Fu's Complaint states a claim upon which relief can be granted against each of the Defendants. I undertake the analysis now to illustrate my rationale for joining the majority in affirming the judgment against Rhodes, but dissenting with respect to the judgment against Naso and Evans.
II. Sufficiency of the Complaint
{31 I begin my analysis by evaluating whether the uncontroverted facts in the Complaint are sufficient on their face to establish a valid claim for breach of contract, fraud, negligent misrepresentation, foreclosure, and fraudulent transfer. See generally Skanchy v. Calcados Ortope SA, 952 P.2d 1071, 1076 (Utah 1998) ("[A] default judgment is valid only if the well-pled facts show that the plaintiff is entitled to judgment as a matter of law."). In reviewing the trial court's entry of default judgment, I accept the factual allegations in the Complaint as true and interpret those facts and all inferences drawn from them in the light most favorable to the nonmoving party. Cf. Oakwood Vill. LLC v. Albertsons, Inc., 2004 UT 101, ¶ 9, 104 P.3d 1226 (employing the same standard in reviewing a trial court's decision granting a rule 12(b)(6) motion to dismiss a complaint for failing to state a claim).
32 As an initial matter, I note that Defendants do not challenge the sufficiency of the claims asserted against Rhodes in connection with the February 7, 2006 investment, the May 10, 2007 investment, and the May 25, 2007 investment (the First Three Investments). With respect to each of these First Three Investments, Rhodes executed the promissory note and trust deed in both his individual and representative capacity. I would therefore affirm the trial court's determination that Rhodes is liable to Fu on the First Three Investments. I separately consider, however, whether Fu has adequately pleaded a claim against Naso or Evans based on the First Three Investments and whether he has sufficiently pleaded a claim against each of the Defendants on the July 28, 2007 investment (the Fourth Investment).
A. Breach of Contract
1. The First Three Investments
1 33 As discussed, Defendants do not contest that the Complaint states a claim for *93 breach of contract against Rhodes with respect to the First Three Investments. Fu contends that the Complaint also states a claim against Naso and Evans for joint and several liability with Rhodes under a theory of partnership, joint venture, or partnership by estoppel. Defendants disagree, claiming that even if accepted as true, the allegations of the Complaint do not establish that Naso or Evans engaged in a partnership, joint venture, or partnership by estoppel with Rhodes. In support of their position, Naso and Evans point to email exhibits attached to the Complaint that include the reference "PGI Management, Inc." in the signature line of the senders, and a promissary note and warranty deed attached to the Complaint which refer to "L20 Homes, LLC." [11] They ask this court to defer to the characterization of the entities in these exhibits rather than to the allegations in the Complaint, and further argue that these characterizations are inconsistent with a claim that L20 Homes and PGI Management are partnerships. Seq, e.g., Davis v. Cole, 999 F.Supp. 809, 812-18 (E.D.Va.1998) (dismissing securities fraud claims where minutes of a corporate board meeting that plaintiff attended, which were attached to the complaint, contradicted plaintiff's allegation in the complaint that he was unaware that a corporate transaction involved terms different from those of the parties' prior oral agreement). In response, Fu contends that the exhibits simply establish Defendants' false representations about PGI Management and L20 Homes, and that such references do not constitute proof of the entities' actual form.
34 "The rules are clear that documents attached to a complaint are incorporated into the pleadings ... and are fair game for this court to consider in addition to the complaint's averments." Oakwood Vill., 2004 UT 101, ¶ 10, 104 P.3d 1226. Accordingly, in determining whether Fu has adequately pleaded claims against Naso or Evans on theories of joint venture, partnership, or partnership by estoppel, I examine the Complaint and the attached exhibits together. See Utah R. Civ. P. 10(c) ("An exhibit to a paper is a part thereof for all purposes.").
135 The Complaint alleges that Defendants were doing business as PGI Management and that Defendants "worked in concert to make the [Fourth Investment] look great, safe secure, profitable and legitimate." Paragraphs 89 and 40 of the Complaint each state that Rhodes, Naso, Evans, and Smith "held themselves out to be partners or part of a joint venture." In support, paragraph 39 references an attached email (the May 18, 2007 email) sent to Fu, Rhodes, Naso, and employees of Escrow Specialists, an escrow company hired by PGI Management, in which Smith thanked employees of the escrow company, stating, "We really do appreciate all that you continue to do for myself, [Rhodes], [Naso], and the whole PGI Team!!!" Paragraph 40 references a spreadsheet attached to the Complaint which is titled "Frank Fu-Buy-Out-Joey Naso and Rene Evans," and lists the properties allegedly owned by L20 Homes and the amounts that Fu and Rhodes would each contribute to L2O0 Homes. According to Fu, the combination of these references is enough to support his claim that Naso and Evans were partners, joint venturers, or partners by estoppel with Rhodes and are jointly and severally liable with him on the First Three Investments.
136 The Utah Legislature has defined a partnership as "an association of two or more persons to carry on as co-owners [of] a business for profit." See Utah Code Ann. § 48-1-8 (LexisNexis Supp.2012).[12]" "The sharing *94 of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived." Id. § 48-1-4(8) (Lexis Nexis 2010). However, "[the receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business." Id. § 48-1-4(4).
1 37 Similarly, a joint venture is defined as "an association of two or more persons to carry on as co-owners of a single business enterprise." Id. § 48-1-8.1(1). While some distinctions exist between a joint venture and a partnership, "the relations among joint adventurers are mainly governed by partnership law." Nupetco Assocs. v. Jenkins, 669 P.2d 877, 882 n. 3 (Utah 1983). Because "a joint venture is in the nature of a partnership; ... to establish such an arrangement, there must be an agreement, express or implied, for the sharing of profits." Vern Shutte & Sons v. Broadbent, 24 Utah 2d 415, 473 P.2d 885, 886 (1970). Accordingly, the Utah Supreme Court has identified the essential elements of a joint venture as including, -
[1] a community of interest in the performance of the common purpose, [2] a joint proprietary interest in the subject matter, [3] a mutual right to control, [4] a right to share in the profits, and [5] unless there is an agreement to the contrary, a duty to share in any losses which may be sustained.
Ellsworth Paulsen Constr. Co. v. 51-SPR-LLC, 2008 UT 28, ¶ 15, 183 P.3d 248 (alterations in original) (citation and internal quotation marks omitted). ©
138 Here, I believe that the Complaint fails to allege facts that could support a determination that Naso or Evans were engaged in a partnership or joint venture with Rhodes. Nowhere in the Complaint does Fu allege that Defendants were sharing profits from either PGI Management or L2O Homes. Likewise, Fu does not allege that they assumed a duty to share in the losses of either entity. At most, the Complaint contains a bald assertion that Naso and Evans held themselves out as partners or joint ven-turers. However, "a plaintiff's legal allegations are not binding" in determining whether a complaint states a claim upon which a default judgment can be based. See Skanchy v. Calcados Ortope SA, 952 P.2d 1071, 1076 (Utah 1998); see also Landers, Scelfo v. Corporate Office Sys., Inc., 356 Ill. App.3d 1060, 293 Ill.Dec. 170, 827 N.E.2d 1051, 1058 (2005) ("A bald assertion that a partnership or joint venture exists is not sufficient to plead the existence of such a relationship."). The actual documents identified by Fu do not contain statements by Naso or Evans holding themselves out as Rhodes's partner. Accordingly, I would conclude that the Complaint does not support a judgment based on partnership or joint venture against Defendants.
{39 In the alternative, Fu contends that he has alleged sufficient facts to support a theory of liability based on partnership by estoppel. The Utah Legislature has defined a partnership by estoppel as follows:
When a person by words spoken or written or by conduct represents himself, or consents to another's representing him, to anyone as a partner, in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made who has on the faith of such representation given credit to the actual or apparent partnership, and, if he has made such representation or consented to its being made in a public manner, he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by, or with the knowledge of, the apparent partner making the representation or consenting to its being made.
Utah Code Ann. § 48-1-18 (LexisNexis 2010). The Complaint fails to allege facts that could support a partnership by estoppel *95 against Evans or Naso. Although Fu points us to the May 18, 2007 email thanking the title company on behalf of the "PGI team," nothing in that email states that Evans or Naso are partners, in an existing partnership, or that they consented to such a representation. Likewise, the spreadsheet contains no indication that Naso or Evans were members of a partnership, that they were sharing profits, or that they had consented to Rhodes representing them as his partners. Thus, even interpreting the allegations and all reasonable inferences in a light most favorable to Fu, the Complaint fails to set forth factual allegations that could support a claim that Naso and Evans are jointly and severally liable with Rhodes on a theory of partnership by estoppel.
40 Because the allegations of the Complaint do not state a claim against Naso or Evans with respect to the First Three Investments, I believe that default judgment was improperly entered against them on those claims. See Skanchy, 952 P.2d at 1076 ("[A] default judgment is valid only if the well-pled facts show that the plaintiff is entitled to judgment as a matter of law."). Accordingly, I would vacate the portion of the default judgment against Naso and Evans related to the First Three Investments.
2. The Fourth Investment
T41 With respect to the Fourth Investment, Defendants argue that the Complaint fails to state a cause of action against Rhodes for breach of contract. They correctly note that, unlike the documents associated with the First Three Investments, Rhodes executed the trust deed and promissory note related to the Fourth Investment only in his representative capacity as the managing member of L20 Homes. As a result, Defendants contend that Rhodes is not individually liable for breach of contract, and that Naso and Evans can therefore have no joint and several liability with him.
142 Fu did not name L20 Homes as a defendant. Furthermore, there is nothing in the Complaint that alleges facts that could support "pierc[ing] the corporate veil" and holding Rhodes personally liable under an alter ego theory. See generally Norman v. Murray First Thrift & Loan Co., 596 P.2d 1028, 1030 (Utah 1979) (setting forth the requirements to prove alter ego). Thus, I believe the Complaint fails to state a claim against Rhodes personally for breach of contract with respect to the Fourth Investment. Accordingly, I would hold that the Complaint also fails to state a breach of contract claim under a theory of joint and several lability against Naso or Evans on the Fourth Investment.
B. Fraud and Negligent Misrepresentation
148 Defendants further contend that the Complaint does not state a claim for fraud or negligent misrepresentation in connection with any of the Investments. Specifically, Defendants argue that the Complaint fails to plead these claims with particularity. To allege a claim for fraud, a party's complaint
[mjust allege (1) that a representation was made (2) concerning a presently existing material fact (8) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.
Educators Mut. Ins. Ass'n v. Allied Prop. & Cas. Ins. Co., 890 P.2d 1029, 1032 (Utah 1995). - Negligent misrepresentation is a form of fraud [13] that "occurs when a person *96 supplies false information for the guidance of others in their business transactions, if the person supplying the information failed to exercise reasonable care or competence in obtaining it." See Rawson v. Conover, 2001 UT 24, ¶ 31, 20 P.3d 876.
44 Rule 9(b) of the Utah Rules of Civil Procedure requires a plaintiff to plead the relevant facts supporting a fraud claim with sufficient particularity to show what facts are claimed to constitute fraud. See Utah R. Civ. P. 9(b) ("In all averments of fraud ..., the circumstances constituting fraud shall be stated with particularity."). Negligent misrepresentation claims are also governed by the particularity requirement of rule 9(b). See Williams v. State Farm Ins. Co., 656 P.2d 966, 972 (Utah 1982) (holding that the rule 9(b) particularity requirement "reach[es] all circumstances where the pleader alleges the kind of misrepresentations, omissions, or other deceptions covered by the term 'fraud in its broadest dimension"). "[Olne requirement for pleading fraud with particularity is to identify the offender." Coroles v. Sabey, 2008 UT App 339, ¶ 28, 79 P.3d 974. Additionally, "[flor the purpose of testing the sufficiency of a pleading, aver-ments of time and place are material and shall be considered like all other averments of material matter." See Utah R. Civ. P. 9(f); see also Coroles, 2008 UT App 889, 1 28 n. 15, 79 P.3d 974 (stating that time and location are "relevant surrounding facts" regarding a misrepresentation (citation and internal quotation marks omitted)). Thus, a plaintiff's "mere recitation ... of the elements of fraud in a complaint does not satisfy the particularity - requirement." - Armed Forces Ins. Exch. v. Harrison, 2003 UT 14, ¶ 16, 70 P.3d 85.
145 Balanced against these requirements is the general relaxation of pleading requirements under our notice pleading standards. The Utah Supreme Court has explained that the fundamental
purpose of our liberalized pleading rules is to afford parties the privilege of presenting whatever legitimate contentions they have pertaining to their dispute, subject only to the requirement that their adversary have fair notice of the nature and basis or grounds of the claim and a general indication of the type of litigation involved. The functions of issue-formulation and fact-revelation are appropriately left to the deposition-discovery process.
Williams, 656 P.2d at 971 (citations and internal quotation marks omitted).
146 Defendants argue that the misrepresentations Fu alleges are all attributable to persons other than Naso or Evans and that the Complaint does not specify when the statements were made or where the parties were at the time and, thus, are not sufficiently particular. Next, Defendants argue that the Complaint does not allege any damages proximately caused by Rhodes's misrepresentations.
{47 I agree with Defendants that Fu's Complaint does not adequately plead claims for fraud or negligent misrepresentation against Naso and Evans. While the Complaint states that Rhodes, Naso, Evans, and Smith "represented that [Fu's] investments would be, among other things, secured by real property, safe, secure and that he would be investing property and in L20 Homes," it does not identify any specific representations made by either Naso or Evans. Instead, the Complaint makes numerous assertions in the passive voice without identifying who made the particular statements, including that "Fu was told that [Naso] and [Evans] wanted out of L20 Homes, LLC because [Evans's] health was not good enough to continue with the investment"; that "Fu was promised" that the investment "was to be secured by all the assets of L20 Homes, LLC"; and that "the assets of L20 Homes were represented to be" several pieces of property. Cf. Coroles, 2008 UT App 339, ¶ 28, 79 P.3d 974 ("For the most part, [pllaintiffs use the passive voice in this section, failing to identify exactly who made the alleged misrepresentations.... Without any indication of who made this statement to them, however, we can hardly conclude that [plaintiffs have pleaded this allegation with particularity." (footnote omitted)). Thus, Fu's Complaint *97 fails to satisfy "one requirement for pleading. fraud with particularity" because it does not identify Naso or Evans as an "offender" who made a specific fraudulent or negligent misrepresentation. See id. Therefore, I agree with Defendants that the Complaint fails to state a claim against Naso or Evans for fraud or negligent misrepresentation.
148 In contrast, if the allegations in the Complaint are interpreted with all reasonable inferences in a light most favorable to Fu, the Complaint is particular enough to demonstrate a cause of action for fraud or for negligent misrepresentation against Rhodes. The Complaint asserts that "Rhodes promised a 16% return on investment with monthly payments of interest to be paid to ... Fu and the investment was to be secured by several pieces of property." Additionally, an email attached to the Complaint establishes that Rhodes sent Fu a list of properties that were falsely represented to be the assets of L20 Homes on July 18, 2007, and states, "No turning back. I will need the $110,000 before Monday Evening. Please." The Complaint further alleges that based upon those specifically identified representations, Fu "invested $105,000 on July 28, 2007." It also asserts that Rhodes "intended through such misrepresentations and omissions to induce ... Fu to lend money based thereon," that Rhodes's representations were false, and that Rhodes "knowingly made the false statements." The Complaint then alleges that Rhodes stopped making payments to Fu after receiving the Fourth Investment, that "Fu has received approximately $18,500[ ] in payments on the $142,676( ] invested," and that Rhodes never secured the properties in which Fu thought he had invested. Additionally, the Complaint alleges that Rhodes "transferred property" of L20 Homes that was supposed to be security for the Fourth Investment after Fu had advanced the proceeds.
49 When combined with the identification of specific representations allegedly. made by Rhodes, I would hold that these allegations are sufficient to satisfy rule 9(b)'s particularity requirement, including the "relevant surrounding fact[]" of time. See Coroles v. Sabey, 2003 UT App 339, ¶ 28 n. 15, 79 P.3d 974 (citation and internal quotation marks omitted). The - Complaint - references Rhodes's email solicitation to Fu on July 18, 2007, which included a list of the investment properties, thereby providing a reasonable inference that Rhodes's representation that the investment would be secured by these properties was made a mere five days before Fu made the Fourth Investment on July 23, 2007. Moreover, the promissory note for the Fourth Investment itself states, "This note shall be secured by all of the assets of L20 Homes, LLC." Thus, it is reasonable to infer from the Complaint that Rhodes made, or reiterated, these representations to Fu on the same day that he made the Fourth Investment.
150 Because the uncontroverted allegations of the Complaint are sufficient to establish a valid claim for fraud or negligent misrepresentation against Rhodes, I would conclude that the trial court did not err in entering default judgment against Rhodes, including in connection with the Fourth Investment. See Skanckhy v. Calcados Ortope SA, 952 P.2d 1071, 1076 (Utah 1998).
C. - Foreclosure and Fraudulent Transfer
f 51 Finally, Defendants contend that the Complaint fails to state a claim for foreclosure and fraudulent transfer. Because I would determine that the default judgment against Rhodes with respect to each of the Investments is supported by other theories alleged in the Complaint, I would not address this issue as it relates to him. See Cook Assocs., Inc. v. Warnick, 664 P.2d 1161, 1168 (Utah 1983) (holding that it was permissible for a party to plead two alternative causes of action, but concluding that "the court could not properly enter judgment on both theories, since that would represent a double recovery"). Moreover, I would hold that the Complaint fails to state a claim against Naso or Evans for foreclosure or fraudulent transfer with respect to the Investments.
152 Utah's Uniform Fraudulent Transfer Act defines fraudulent transfer, in relevant part, as
[al] transfer made or obligation incurred by a debtor ... (a) with actual intent to hinder, delay, or defraud any creditor of the *98 debtor; or (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation; [where] the debtor: (1) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (i) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
Utah Code Ann. § 25-6-5(1) (LexisNexis 2007). Thus, the plain language of the Uniform Fraudulent Transfer Act limits its application to transfers or obligations by a "debtor." See id.; see also In re Richards, 2006 WL 4846392, at *4 (Bankr.D.Utah June 18, 2006) (finding that the Uniform Fraudulent Transfer Act was inapplicable because none of the transfers were made by a "debt- or").
153 Because I would conclude that the Complaint does not state a claim for breach of contract, see supra ¶¶ 40, 42, fraud, or negligent misrepresentation against Naso or Evans, see supra 1 47, I would conclude that Fu does not have a right to a money judgment against Naso or Evans on any debt, and he therefore eannot recover against them in fraudulent transfer. See Utah Code Ann. § 25-6-5. Likewise, "in a foreclosure proceeding, the mortgagee's right to a money judgment is not a separate matter but a prerequisite to the equitable relief demanded." State Bank of Lehi v. Woolsey, 565 P.2d 413, 416 (Utah 1977); see also id. at 415 (The main purpose of a mortgage is to insure the payment of the debt for which it stands as security; and foreclosure is allowed when necessary to carry out that objective." (citation and internal quotation marks omitted)). As a result, I would conclude that the Complaint does not state a claim for foreclosure or fraudulent transfer against Naso or Evans.
1 54 However, rather than simply vacating the judgment against Naso and Evans, I would follow the lead of the Utah Supreme Court in Skanchy and remand with instructions to allow Fu an opportunity to amend the Complaint. See Skanchy, 952 P.2d at 1078. If we were simply to vacate the Order and Judgment in its entirety or to modify it to exclude Naso and Evans from joint and several liability, as suggested by those parties, we would place Fu in a worse position than if Defendants had not been sanctioned. If Defendants had challenged the sufficiency of the Complaint in the trial court, Fu likely would have been afforded an opportunity to amend the Complaint to cure any deficiencies. See Utah R. Civ. P. 15(a) (stating that "leave [to amend] shall be freely given when justice so requires"). Thus, I agree with Fu that it would not be "equitable to allow parties to fail to comply with the rules of procedure and hinder the prosecuting of claims against them and then be able to evade the sanction." Such a decision would be contrary to the purpose of rule 87. See id. R. 37(c) ("The court may make orders regarding disclosure or discovery or to protect a party or person from discovery being conducted in bad faith or from annoyance, embarrassment, oppression, or undue burden or expense, or to achieve proportionality...."); see also Transamerica Title Ins. Co. v. United Res., Inc., 24 Utah 2d 346, 471 P.2d 165, 167 (1970) ("The purpose of the discovery ... procedures provided for in our rules is to furnish a method for searching out and facilitating the resolution of issues which are not in dispute, and of settling the rights of the parties without the time, trouble and expense of a trial. It is indispensable to the carrying out of that purpose that parties furnish essential information when it is requested in conformity with the rules of procedure." (footnote omitted)).
55 Accordingly, I would remand to the trial court with instructions to grant Fu leave to amend his Complaint in an attempt to assert proper claims against Naso and Evans, in which event Defendants may respond. See Skanchy v. Calcados Ortope SA, 952 P.2d 1071, 1078 (Utah 1998) (holding that the complaint did not state a claim for promissory estoppel, and remanding "to the trial court for further consideration, including whether plaintiffs' election to pursue reliance damages is binding and whether [the plaintiffs] may amend their complaint without voiding the default, if those issues are raised"); see also Alan Neumam Prods., Inc. v. Albright, 862 F.2d 1888, 1392-98 (9th Cir.1988) (holding that the trial court erred in entering a default judgment because the complaint *99 failed to state a claim but remanding with instructions to allow appellee "to amend its complaint, in which event [appellant] may respond"); Hauspie v. Stonington Partners, Inc., 945 A.2d 584, 587-88 (Del.2008) (reversing a default judgment entered as a discovery sanction in part because fraud allegations in the complaint were not sufficiently pleaded and remanding to the trial court "with instructions to grant appellees leave to amend their complaint").
T56 In sum, I respectfully dissent from the portion of the majority opinion holding that we should not evaluate the sufficiency of the Complaint on appeal because Defendants did not raise this issue in the trial court. I would consider whether Fu's Complaint states a claim upon which relief can be granted against each of the Defendants. As a matter of law, I believe that the Complaint adequately supports a default judgment against Rhodes on each of the Investments. I would therefore affirm the trial court's entry of default judgment against Rhodes. However, I believe that the Complaint fails to set forth factual allegations that could support any claim against Naso or Evans for breach of contract, fraud, negligent misrepresentation, foreclosure, or fraudulent transfer. Therefore, I would determine that the trial court erred in entering judgment against Naso and Evans, but remand to the trial court to allow Fu the opportunity to amend his Complaint.

. Rule 59 allows a trial court to "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." See Utah R. Civ. P. 59(a).

. That order states that the manufacturer did not allege any ground for relief other than mistake, inadvertence, surprise, or excusable neglect. Brief for Appellant at add., Skanchy v. Calcados Ortope SA, 952 P.2d 1071 (Utah 1998) (No. 2195050).

. See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1308 (11th Cir.2009) (addressing a defendant's challenge to the sufficiency of a complaint after its pleadings had been struck on an issue raised before the district court, but otherwise holding that their "additional arguments that the complaint was insufficient ... were not raised before the district court" and that because "these alleged problems with the complaint were not raised below," the court would not review them on appeal); United States v. One 1979 Rolls-Royce Corniche Convertible, 770 F.2d 713, 715, 717 (7th Cir.1985) (affirming a district court's eniry of default judgment for failure to appear, holding that "[appellant's] challenges [to] the sufficiency of the complaint and the adequacy of the notice and service of process ... cannot be urged on appeal because none of them [were] presented to the district court in the first instance").

. See also Tyco Fire & Sec., LLC v. Alcocer, 218 Fed.Appx. 860, 864 (11th Cir.2007) ("[Blefore entering a default judgment ..., the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought. At that point, the defendant, even though in default, is still entitled to contest the sufficiency of the complaint and its allegations to support the judgment being sought."); Statewide Envtl. Serv., Inc. v. Fifth Third Bank, 352 S.W.3d 927, 930, 932 n. 7 (Ky.Ct.App.2011) (holding that a default judgment entered as a result of striking appellants' answer "itself may be appealed directly without preservation of the error"); Hunter v. Spaulding, 97 N.C.App. 372, 388 S.E.2d 630, 634 (1990) (holding that an appellant's "exception to the judgment, entered in open court, permitted him to challenge on appeal whether a default judgment could be based upon the [appel-lees'] complaint," and rejecting the appellees' "contention that this issue [had] not been preserved for appeal").

. Additionally, Defendants claim that Fu's references throughout the Complaint to L20 Homes as "L20 Homes, LLC" are judicial admissions that L20 Homes is not, in fact, a partnership. Accordingly, they ask us to take judicial notice that L20 Homes is not a partnership. Fu disputes this determination, arguing that his use of this title is "simply a reference to that enterprise by the name used by [Defendants]." I would decline to take judicial notice because L20 Homes's form is reasonably disputed, see Utah R. Evid. 201(b) ("The Court may judicially notice a fact that is not subject to reasonable dispute...."), and Defendants have failed to provide any information establishing that L20 Homes is, in fact, a limited liability company, see id. R. 201(c)(2) (providing that a court "must take judicial notice if a party requests it and the court is supplied with the necessary information").

. Sections 48-1-3, 48-1-3.1, 48-1-4, and 48-1-13 of the Utah Code have been repealed and replaced with the Utah Uniform Partnership Act, *94 effective July 1, 2013. See Utah Code Ann. §§ 48-1-3 to 4, -13 (LexisNexis 2010 and Supp. 2012), repealed by Unincorporated Business Entity Uniform Acts, ch. 353, § 310, 2011 Utah Laws 2162, 2165, 2180-203, as amended by Unincorporated Business Entities Act Amendments, ch. 244, § 6, 2012 Utah Laws 1036. Because the repealed version of the code has remained effective at the relevant times of this case, I cite that version.

. "Although the two claims are similar, negligent misrepresentation 'carries a lesser mental state, requiring only that the [party] act carelessly or negligently.' " Moore v. Smith, 2007 UT App 101, 136 n. 12, 158 P.3d 562 (emphasis omitted) (quoting Robinson v. Tripco Inv., Inc., 2000 UT App 200, ¶ 13, 21 P.3d 219). Fraud, "on the other hand, requires the [party] to have acted 'knowingly or recklessly.'" Id. (quoting Robinson, 2000 UT App 200, ¶ 13 n. 3, 21 P.3d 219).
Because the facts required to prove both negligent misrepresentation and [fraud] are similar, and the only difference between the two claims is a lesser mental state for negligent misrepresentation, [I would] conclude that [a party] can *96 be liable for only one or the other regarding each defect at issue in this case.
See id.